Filed 3/11/16 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| VIRGILIO ORCILLA et al., | H040021 |
| | (Santa Clara County |
| Plaintiffs and Appellants, | Super. Ct. No. 112CV225295) |
| v. | |
| | ORDER MODIFYING OPINION |
| BIG SUR, INC., et al., | NO CHANGE IN JUDGMENT |
| Defendants and Respondents. | |

BY THE COURT:

It is ordered that the opinion filed herein on February 11, 2016, be modified in the following particulars:

On page 6, the second full paragraph, insert the following as a footnote after the last sentence in the paragraph ("The Orcillas timely appealed."):

While this matter was pending, the parties notified us that the case had been settled and the Orcillas requested dismissal of the appeal. "After the record on appeal is filed, dismissal of the action based on abandonment or stipulation of the parties is discretionary, rather than mandatory." (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1121, fn. 5; Cal. Rules of Court, rule 8.244.) We concluded that the matter is important and of continuing public interest, warranting our review. (*Burch v. George* (1994) 7 Cal.4th 246, 253, fn. 4.) Accordingly, we denied the request for dismissal. In deciding the appeal on the merits, we follow established precedent in retaining jurisdiction to resolve the issues presented in the case.

There is no change in judgment.

Dated:_____                    _____

                                                                            Premo, J.

_____                    _____

        Rushing, P.J.                                        Elia, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| VIRGILIO ORCILLA et al., | H040021 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 112CV225295) |
| v. | |
| BIG SUR, INC., et al., | |
| Defendants and Respondents. | |

Plaintiffs Virgilio and Teodora Orcilla lost their San Jose home (the Property) through a nonjudicial foreclosure sale in May 2010. The Property was purchased by a third party, defendant Big Sur, Inc. (Big Sur). The Orcillas vacated the Property after Big Sur obtained a judgment against them in an unlawful detainer action. Thereafter, the Orcillas sued Big Sur and the parties involved in the nonjudicial foreclosure sale, Bank of America, N.A. (BofA); ReconTrust Company, N.A. (ReconTrust); and Mortgage Electronic Registration Systems, Inc. (MERS) (collectively, the Bank Defendants), to set aside the trustee's sale.

Big Sur and the Bank Defendants successfully demurred to the operative second amended complaint. The Orcillas, proceeding in propria persona, appeal from a judgment entered in favor of defendants. We reverse and remand with instructions.

I. **FACTUAL BACKGROUND**

The Orcillas are Filipino and English is their second language. Virgilio is unable to work due to a 2004 medical diagnosis.[1] In 2006, Teodora contacted Quick Loan

---

[1] We refer to the Orcillas by their first names where necessary for purposes of clarity and not out of disrespect.

Funding, Inc. (Quick Loan) about refinancing the Property. She did so in response to marketing materials she had received from the company. After speaking with a Quick Loan agent, Teodora applied to refinance the Property for $525,000. At the Quick Loan agent's recommendation, Teodora did not include Virgilio on the loan application. Teodora told the agent she could not afford the loan modification because the monthly payments would be more than her monthly income, but she eventually accepted the agent's false representation that she could afford the loan modification.

On May 9, 2006, Teodora obtained a $525,000 real property loan from Quick Loan. She alone executed an adjustable rate note (the Note), in which she promised to repay the loan at an initial interest rate of 8.99 percent. The Note provided that the interest rate would be variable after two years and would never exceed 14.99 percent. The Note further provided that Teodora's initial monthly payments would be in the amount of $4,220.49. (In 2005 and 2006, Teodora's monthly income was less than $3,000 and Virgilio did not work.)

The Note was secured by a deed of trust (the Deed of Trust) on the Property. The Deed of Trust, which was signed jointly by the Orcillas, named MERS as the beneficiary and LandAmerica Commonwealth as the trustee.

ReconTrust, as trustee of the Deed of Trust, recorded a Notice of Default and Election to Sell Under Deed of Trust (First Notice of Default) on February 2, 2007. The First Notice of Default reflected an arrearage of $16,668. ReconTrust rescinded the Notice of Default on May 15, 2007.

On April 18, 2008, ReconTrust recorded a Second Notice of Default (Second Notice of Default), which reflected an arrearage of $32,048. The Second Notice of Default was signed by Anselmo Pagkaliwangan. On March 28, 2013, Teodora contacted ReconTrust. The representatives with whom Teodora spoke could not confirm whether Anselmo Pagkaliwangan had ever worked for ReconTrust. The Orcillas allege that forensic loan audits and lawsuits indicate Anselmo Pagkaliwangan also signed documents

2

for various other entities, including LSI Title Company and Washington Mutual, N.A. Based on the foregoing, the Orcillas allege the Second Notice of Default was "stamped/robo-signed."

By letter dated August 15, 2008, Countrywide Home Loans (Countrywide) advised Teodora that her loan modification had been approved. The letter advised that Teodora's modified principal loan balance was $570,992.60 and that, effective September 1, 2008, her monthly loan payment would be $4,627.47. The letter stated "[t]his [a]greement will bring your loan current" and requested that Teodora sign, date, and return one copy of the enclosed loan modification agreement to Countrywide by September 14, 2008. The letter further provided "[t]his Letter does not stop, waive or postpone the collection actions, or credit reporting actions we have taken or contemplate taking against you and the property. In the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than September 14, 2008, we will continue our collections actions without giving you additional notices or response periods." Teodora signed the enclosed loan modification agreement on September 11, 2008. The loan modification agreement provided for a five-year fixed interest rate of 8.99 percent followed by a variable interest rate. The Orcillas allege that BofA employees represented in August 2008 that the loan modification would result in a "new loan." They further allege that defendants admitted in a separate legal action in federal court that the loan modification "added Plaintiffs' previously unpaid balances to a new loan."

On April 23, 2010, ReconTrust sent a notice of trustee's sale to the Orcillas that listed the sale date as May 18, 2010. Also on April 23, 2010, a substitution of trustee, in which MERS substituted ReconTrust as trustee under the Deed of Trust, was sent to the

3

former trustee.  On May 3, 2010, ReconTrust recorded a notice of trustee's sale listing the sale date as May 24, 2010.[2]

On May 12, 2010, the Orcillas submitted a HAMP[3] loan modification application to BofA with the assistance of a nonprofit, California Community Transitional Housing, Inc.  Attached to the second amended complaint is the declaration of Nicholas Agbabiaka, the California Community Transitional Housing, Inc. employee who assisted the Orcillas.  Agbabiaka declared "I sent the . . . HAMP package . . . to Bank of America. I also contacted Bank of America letting them know that the Orcillas . . . wanted to pursue a HAMP modification. . . .  Bank of America stated that it had received and was reviewing the Orcillas' HAMP application.  Bank of America also stated that it would send a packet for the Orcillas to complete and that a Trustee's Sale scheduled for May 24, 2010 would *not* proceed."  Agbabiaka passed that information along to Teodora.

---

[2] The Note, the Deed of Trust, loan modification letter and agreement, and the recorded documents were attached as exhibits to the second amended complaint.

[3] HAMP refers to the federal Home Affordable Modification Program.  (*Bushell v. JPMorgan Chase Bank*, *N.A.* (2013) 220 Cal.App.4th 915, 918.)  "When financial markets nearly collapsed in the late summer and early fall of 2008, Congress enacted the Emergency Economic Stabilization Act of 2008 (Pub.L. No. 110-343 (Oct. 3, 2008) 122 Stat. 3765).  (*Wigod* [*v. Wells Fargo Bank*, *N.A.* (7th Cir. 2012)] 673 F.3d [547,] 556 [(*Wigod*)].)  The centerpiece of this act was the federal Troubled Asset Relief Program (TARP) which, in addition to providing a massive infusion of liquidation to the banking system, required the United States Department of the Treasury . . . to implement a plan to minimize home foreclosures.  (See *Wigod*, at p. 556; 12 U.S.C. § 5219(a).) [¶] That plan was HAMP, introduced in February 2009, and funded by a $50 billion set-aside of TARP monies to induce lenders to refinance mortgages to reduce monthly payments for struggling homeowners.  (*Wigod*, *supra*, 673 F.3d at p. 556.)  Specifically, HAMP enables certain homeowners who are in default or at imminent risk of default to obtain 'permanent' loan modifications, by which their monthly mortgage payments are reduced to no more than 31 percent of their gross monthly income for a period of at least five years.  Lenders receive from the government a $1,000 incentive payment for each permanent HAMP modification, along with other incentives."  (*Id*. at pp. 922-923.)

However, the trustee's sale did proceed. On May 24, 2010, the Bank Defendants sold the Property to Big Sur at a public auction for $495,500. ReconTrust recorded a Trustee's Deed Upon Sale stating that the amount of unpaid debt was $688,871.94. The Trustee's Deed further stated that "[a]ll requirements of law regarding the recording and mailing of copies of the Notice of Default and Election to Sell, and the recording, mailing, posting, and publication of the Notice of Trustee's Sale have been complied with."

Following the trustee's sale, BofA informed Agbabiaka that it never received the Orcillas' HAMP loan modification application. That application was never granted nor denied.

Big Sur filed an unlawful detainer action against the Orcillas and obtained a judgment against them. The Orcillas and their three minor grandchildren were forced to vacate the Property.

The California Department of Corporations revoked Quick Loan's lending license on May 27, 2008, having found Quick Loan had pledged trust funds to obtain gambling markers from Las Vegas casinos and was charging borrowers unauthorized fees. The Orcillas allege Quick Loan never sold or assigned the Note or its interest in the Deed of Trust.

## II.    PROCEDURAL BACKGROUND

The Orcillas filed suit against Big Sur and the Bank Defendants on May 24, 2012. Defendants successfully demurred to the Orcillas' initial complaint and first amended complaint, but the Orcillas were granted leave to amend those pleadings. The operative second amended complaint, filed on April 2, 2013, asserts 13 causes of action: wrongful foreclosure; violation of Civil Code section 2924;[4] violation of section 2924b; violation of section 2924c; violation of section 2924f; violation of section 2932.5; breach of

---

[4] Unspecified statutory references are to the Civil Code.

5

contract; fraud; breach of oral contract; promissory estoppel; quiet title; unlawful business practices in violation the unfair business competition law (UCL) of Business and Professions Code section 17200 et seq.; and declaratory relief.

Each cause of action is largely based on the following allegations: the original loan and the loan modification were unconscionable and unenforceable; no valid notice of default was issued prior to the trustee's sale because the loan modification cured the second Notice of Default; the trustee's sale was fraudulent because the Notice of Trustee's Sale set forth an incorrect date of sale; the Bank Defendants lacked the authority to foreclose on the Property because the Deed of Trust never was assigned to them; the Bank Defendants lacked the authority to foreclose on the Property because the Deed of Trust was invalid, having been bifurcated from the Note; and the Bank Defendants improperly proceeded with the trustee's sale after promising to postpone it. Big Sur and the Bank Defendants successfully demurred. The trial court sustained defendants' demurrers without leave to amend as to all causes of action except the promissory estoppel claim against the Bank Defendants, for which leave to amend was granted.

After the Orcillas failed to file a third amended complaint within the leave period, the Bank Defendants moved to dismiss the action. The court granted that motion and entered judgment in favor of defendants. The Orcillas timely appealed.

## III. DISCUSSION

### A. *Standard of Review*

We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) The facts alleged in the pleading are deemed to be true, but contentions, deductions, and conclusions of law are not. (*Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1300.) In addition to the complaint, we also may consider matters subject to judicial notice. (*Ibid.*) Facts that are

6

subject to judicial notice trump contrary allegations in the pleadings. (*Ibid*.) Facts appearing in exhibits attached to the complaint also are accepted as true and are given precedence, to the extent they contradict the allegations. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.) We do not review the validity of the trial court's reasoning. (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959.) For that reason, and because demurrers raise only questions of law, we may also consider new theories on appeal to challenge or justify the trial court's rulings. (*Ibid*.)

"Where a demurrer is sustained without leave to amend, [we] must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend. [Citation.] The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect." (*Berg & Berg Enterprises*, *LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1035.)

**B.     *General Principles Governing Nonjudicial Foreclosure***

In California, the financing or refinancing of real property generally is accomplished by the use of a deed of trust. (*Calvo v. HSBC Bank USA*, *N.A.* (2011) 199 Cal.App.4th 118, 125.) Under a deed of trust, "the borrower, or 'trustor,' conveys nominal title to property to an intermediary, the 'trustee,' who holds that title as security for repayment of the loan to the lender, or 'beneficiary.' " (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334.) " 'The trustee of a deed of trust is not a true trustee, and owes no fiduciary obligations; he merely acts as a common agent for the trustor and the beneficiary of the deed of trust.' " (*Jenkins v. JPMorgan Chase Bank*, *N.A.* (2013) 216 Cal.App.4th 497, 508 (*Jenkins*).)

"The customary provisions of a valid deed of trust include a power of sale clause, which empowers the beneficiary-creditor to foreclosure on the real property security if the trustor-debtor fails to pay back the debt owed under the promissory note."

7

(*Jenkins*, *supra*, 216 Cal.App.4th at p. 508.)  "Upon a trustor-debtor's default on a debt secured by a deed of trust, the beneficiary-creditor may elect to judicially or nonjudicially foreclose on the real property security."  (*Ibid*.)

The California Legislature has established a comprehensive set of legislative procedures governing nonjudicial foreclosures.  (See *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440 (*Debrunner*); §§ 2924-2924k.) " 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' " (*Debrunner*, *supra*, at p. 440.)

The procedure leading up to a nonjudicial foreclosure has been summarized as follows:  "Upon default by the trustor [under a deed of trust containing a power of sale], the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. (Civ. Code, § 2924; [citation].)  The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee.  (Civ. Code, § 2924; [citation].) After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale.  (Civ. Code, § 2924, subd. (b); [citation].)  After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale.  (Civ. Code, § 2924f; [citation].)" (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)

" 'The statutes provide the trustor with opportunities to prevent foreclosure by curing the default.  The trustor may make back payments to reinstate the loan up until five business days prior to the date of the sale . . . . [Citations.]  Additionally, the trustor has an equity of redemption under which the trustor may pay all amounts due at any time prior to the sale to avoid loss of the property.  (§§ 2903, 2905.)' " (*Lona v. Citibank*, *N.A.* (2011) 202 Cal.App.4th 89, 101-102 (*Lona*).)

8

" 'The manner in which the sale must be conducted is governed by section 2924g. "The property must be sold at public auction to the highest bidder. [Citation.] [¶] . . . [¶] . . . A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. [Citation.] Once the trustee's sale is completed, the trustor has no further rights of redemption. [Citation.] [¶] The purchaser at a foreclosure sale takes title by a trustee's deed. If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser. (. . . § 2924; [citation].)" ' " (*Lona*, *supra*, 202 Cal.App.4th at p. 102.)

### C. *Count 1*: *Equitable Cause of Action to Set Aside a Foreclosure Sale*

The Orcillas' first claim is a cause of action to set aside the trustee's sale. "[T]he elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee . . . caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a . . . deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in cases where the trustor . . . challenges the sale, the trustor . . . tendered the amount of the secured indebtedness or was excused from tendering." (*Lona*, *supra*, 202 Cal.App.4th at p. 104.)

#### 1. *The First Element*: *Illegality of the Trustee's Sale*

The Orcillas allege the trustee's sale was illegal for two reasons: (1) the original loan from Quick Loan and the 2008 loan modification were unconscionable and (2) the Deed of Trust is invalid because it was "bifurcated" from the Note. On appeal, they include an additional argument—ReconTrust lacked the power to foreclose on BofA's behalf because BofA did not own the Note.

##### a. *Unconscionability*

The Orcillas allege the loan from Quick Loan was unconscionable because the loan payments exceeded their income; they have limited education and English

9

proficiency; they did not understand the details of the transaction; and the loan documents were on standard, pre-printed forms in English. They allege the 2008 loan modification agreement also was unconscionable because the loan payments exceeded their income; they have limited education and English proficiency; and the loan documents were on standard, pre-printed forms in English.

Unconscionability generally is a legal question we review under the de novo standard. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567.) "Unconscionability has procedural and substantive aspects," both of which must be present for a court to refuse to enforce a contract based on unconscionability. (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 655 (*Abramson*); *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).) Courts use a " 'sliding scale' " approach in assessing the two elements, such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra*, at p. 114.)

### i. *Procedural Unconscionability*

Procedural unconscionability concerns the manner in which the contract was negotiated. (*Abramson, supra*, 115 Cal.App.4th at p. 656.) "Absent unusual circumstances, evidence that one party has overwhelming bargaining power, drafts the contract, and presents it on a take-it-or-leave-it basis is sufficient to demonstrate procedural unconscionability and require the court to reach the question of substantive unconscionability, even if the other party has market alternatives." (*Lona, supra*, 202 Cal.App.4th at p. 109.)

As to both the original loan and the 2008 modification, the Orcillas allege they have limited English fluency and education and that the loan documents were on standard, pre-printed forms in English. These allegations are sufficient to allege at least some measure of procedural unconscionability. (See *Lona, supra*, 202 Cal.App.4th at

p. 111 [holding at the summary judgment stage that evidence that plaintiff "had only an eighth grade education, his English was limited, no one explained the [loan] documents to him, and he did not understand what he was signing" and that the "loan documents appear to be on standard, preprinted forms in English" "was sufficient evidence of unequal bargaining power, oppression or surprise to raise a triable issue regarding *procedural* unconscionability"].)

As noted, the *degree* of procedural unconscionability present is relevant to the enforceability inquiry. The relevant factors in assessing the level of procedural unconscionability are oppression and surprise. (*Abramson, supra*, 115 Cal.App.4th at p. 656.) " 'The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party.' " (*Ibid*.) That the loan documents were on standard, preprinted forms suggests the Orcillas had no role in negotiating their terms. (*Lona, supra*, 202 Cal.App.4th at p. 111.) "The component of surprise arises when the challenged terms are 'hidden in a prolix printed form drafted by the party seeking to enforce them.' " (*Abramson, supra*, at p. 656.) The Orcillas do not allege that any of the key terms of the loans, such as the monthly payment or the interest rate, were hidden in fine print. Thus, they do not allege the element of surprise is present. Based on the foregoing, we conclude the Orcillas have alleged a low degree of procedural unconscionability.

### ii. *Substantive Unconscionability*

"Substantive unconscionability pertains to the fairness of an agreement's actual terms." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*), *LLC* (2012) 55 Cal.4th 223, 246.) As our Supreme Court has explained, the unconscionability doctrine "ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' [citation], ' "unduly oppressive" ' [citation], ' "so one-sided as to 'shock the conscience' " ' [citation], or

11

'unfairly one-sided' [citation]. All of these formulations point to the central idea that the [substantive] unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party' [citation]." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145.) Thus, substantive unconscionability exists where a provision is both "one-sided" and there is no justification for its one-sidedness. (*Armendariz, supra,* 24 Cal.4th at p. 118.)

The Orcillas maintain that the disparity between the monthly loan payments and their income indicates that the loan and loan modification were overly harsh and one-sided. We agree that the allegation that the monthly loan payments exceeded the couple's income by more than $1,000 is sufficient to allege substantive unconscionability. (*Lona, supra,* 202 Cal.App.4th at p. 111 [evidence of an "extreme disparity between the amount of the monthly loan payments and [plaintiff's] income . . . was sufficient to create a triable issue on the question of whether the loans were overly harsh and one sided and thus *substantively* unconscionable"].)

In sum, we conclude the Orcillas have alleged that the original loan and the loan modification were unconscionable and unenforceable, such that the trustee's sale of the Property enforcing them was illegal. Accordingly, the Orcillas adequately allege the first element of their cause of action to set aside the trustee's sale. We need not address their bifurcation or power of sale theories.

### 2. *The Second Element: Harm*

On appeal, the Orcillas argue that they alleged harm, as required by the second element of an equitable cause of action to set aside a foreclosure sale, by pleading that "they were harmed by the sale of their home of 18 years." For that argument, they cite to allegations in their fraud cause of action regarding harm caused by their reliance on the misrepresentations of an alleged robo-signer. Their first cause of action did not incorporate by reference the allegations of the fraud cause of action or allegations set

forth elsewhere in the complaint. Accordingly, their pleading is technically deficient. However, given our duty to liberally construe the complaint's allegations (Code Civ. Proc., § 452), we elect to overlook this pleading deficiency. Therefore, we conclude that the Orcillas adequately allege the second element of their cause of action to set aside the trustee's sale.

### 3. *The Third Element*: *Tender or Excuse*

The third element of an equitable cause of action to set aside a foreclosure sale requires tender. " 'The rationale behind the [tender] rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' " (*Lona*, *supra*, 202 Cal.App.4th at p. 112.) Case law has recognized four exceptions to the tender requirement in actions to set aside a foreclosure sale: (1) the borrower attacks the validity of the debt (e.g., based on fraud); (2) the borrower has a counter-claim or set-off sufficient to cover the amount due; (3) it would be inequitable as to a party not liable for the debt; or (4) the trustee's deed is void on its face (e.g., because the trustee lacked power to convey property). (*Id*. at pp. 112-113.)

The Orcillas do not allege tender or any exceptions to the tender rule in the first cause of action. However, elsewhere in their complaint (in paragraphs not incorporated into the first cause of action), they allege that all four exceptions to the tender rule apply. As to the first exception, they allege the debt is invalid because the original loan and loan modification were unconscionable. As discussed above, the allegations in the second amended complaint are sufficient to allege those agreements were unconscionable and thus unenforceable. Construing the complaint liberally, as we must, we elect to overlook the Orcillas' failure to incorporate their tender-related allegations into the first cause of action. Thus, we conclude they adequately allege the third element of their cause of action to set aside the trustee's sale.

13

### 4. Bona Fide Purchaser

The Bank Defendants assert that "[t]he statutory presumption of validity upon sale to a bona fide purchaser . . . defeats [each of] the Orcillas' claims seeking to set aside the foreclosure sale." We disagree with respect to the Orcillas' equitable cause of action to set aside the trustee's sale.

"Under section 2924, there is a conclusive presumption created in favor of a [bona fide purchaser] who receives a trustee's deed that contains a recital that the trustee has fulfilled its statutory notice requirements. Section 2924 reads in relevant part: 'A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.' " (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1250, fn. omitted (*Melendrez*).) This court has held that a bona fide purchaser under section 2924 " 'is one who pays value for the property without notice of any adverse interest or of any irregularity in the sale proceedings.' " (*Melendrez, supra*, at p. 1250.)

Even assuming Big Sur is a bona fide purchaser, its status as such does not bar the Orcillas' first cause of action. "Section 2924's conclusive presumption language for [bona fide purchasers] applies only to challenges to statutory compliance with respect to default and sales notices." (*Melendrez, supra*, 127 Cal.App.4th at p. 1256, fn. 26.) The challenge to the trustee's sale asserted in the first cause of action "does not involve a claim concerning whether [ReconTrust, the trustee,] followed all statutory procedures with respect to the default and sales notices . . . ." (*Id.* at p. 1256.) Instead, it is based on the alleged unconscionability, and consequent unenforceability, of the loan agreements. We therefore hold that the conclusive presumption for bona fide purchasers under

14

section 2924 does not apply to bar the Orcillas' first cause of action. (*Melendrez*, *supra*, at p. 1256.)

For the foregoing reasons, we conclude the Orcillas have stated a cause of action to set aside the trustee's sale, such that the trial court erred in sustaining the Bank Defendants' demurrer to count 1.

### D. *Counts 2 and 4*: *Violation of Sections 2924 and 2924c*

Counts 2 and 4 largely rely on the theory that the loan modification agreement cured the Orcillas' default, such that the Second Notice of Default should have been rescinded under section 2924c[5] (count 4) and the Bank Defendants failed to issue a valid Notice of Default prior to the trustee's sale in violation of section 2924[6] (count 2). For that theory, the Orcillas rely on language in the letter that accompanied the loan modification agreement stating "[t]his [a]greement will bring your loan current." They further rely on representations by BofA that the loan modification resulted in a "new loan."

The Bank Defendants respond that the letter also required Teodora to make monthly payments of $4,627.47 beginning September 1, 2008, and provided "[t]his Letter does not stop, waive or postpone the collection actions, or credit reporting actions we

---

[5] In 2010, section 2924c, subdivision (a)(2) provided that if the trustor cured the default, "the beneficiary or mortgagee or the agent for the beneficiary or mortgagee shall, within 21 days following the reinstatement, execute and deliver to the trustee a notice of rescission which rescinds the declaration of default and demand for sale and advises the trustee of the date of reinstatement. The trustee shall cause the notice of rescission to be recorded within 30 days of receipt of the notice of rescission and of all allowable fees and costs."

[6] In 2010, section 2924, subdivision (a)(1) required "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents [to] . . . file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default" before exercising a power of sale. Section 2924, subsection (a)(3) required the notice of default to be filed at least three months before the issuance of a notice of sale.

15

have taken or contemplate taking against you and the property. In the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than September 14, 2008, we will continue our collections actions without giving you additional notices or response periods." The Orcillas do not allege they made their September 2008 monthly payment. Thus, according to the Bank Defendants, the Orcillas do not allege that they fulfilled the terms and conditions of the letter, such that another notice of default was required under the terms of the loan agreement letter.

Section 2924c does not define "cure." Black's Dictionary defines "cure of default" as "A debtor's act to correct its failure to perform, or to refrain from performing, according to the terms of an agreement." (Black's Law Dict. (10th ed. 2014).) At issue here is whether Teodora cured her failure to make loan payments by signing the loan modification agreement. In isolation, the language on which the Orcillas rely—"[t]his agreement will bring your loan current"—might reasonably be interpreted to mean that merely entering into the loan modification agreement cured the past default. However, the more specific language on which the Bank Defendants rely forecloses that interpretation by making clear that ongoing foreclosure proceedings would continue without additional notice if the terms and conditions of the letter were not satisfied. One of those terms required Teodora to make monthly payments of $4,627.47 beginning September 1, 2008. Because the Orcillas do not allege they did so, we conclude they do not adequately allege violations of section 2924c, subdivision (a)(2) and section 2924, subdivision (a)(1).

In count 2, the Orcillas also complain that the trustee's sale was conducted without the requisite 20 days' advance notice required by section 2924, subdivision (a)(4). But, in that very same count, they alleged the Notice of Trustee's Sale was mailed to them on April 23, 2010, 31 days before the sale. Accordingly, they do not allege a violation of section 2924, subdivision (a)(4).

16

The Orcillas do not contend they can cure these defects by amendment. Therefore, the trial court did not abuse its discretion in denying them leave to amend counts 2 and 4.

### E.    *Counts 3 and 5*:  *Violation of Sections 2924b and 2924f*

In relevant part, section 2924b requires a trustee to mail a copy of the notice of trustee's sale to the trustor at least 20 days before the date of sale, and section 2924f requires that a notice of trustee's sale be posted in a public place in the city where the property is to be sold and on the property in the same time frame.  These statutes require the notice to include the time of sale.  (§§ 2924b, subd. (b)(2), 2924f, subd. (b)(1).)  In counts 3 and 5, the Orcillas allege that the Notice of Sale that was sent to them and posted on the Property stated an incorrect date of sale, in violation of sections 2924b and 2924f.

To successfully challenge a foreclosure sale based on a procedural irregularity, such as the incorrect date of sale in the Notice of Sale at issue here, the plaintiff must show that the irregularity caused him or her prejudice.  (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 96.)  The operative complaint is devoid of any facts showing (or even suggesting) that the Orcillas suffered any actual prejudice as a result of the procedural defect in the Notice of Sale.  For example, the complaint does not allege that the Orcillas would have cured their default had they been notified of the correct sale date.  Nor does the complaint allege that bidders at the sale were somehow deterred from bidding on the Property due to the defect in the Notice of Sale or that the price paid by Big Sur was lower than it would have been had the Notice of Sale sent to the Orcillas and posted on the Property included the correct date.  Because plaintiffs have not alleged facts showing actual prejudice from the procedural irregularity in the Notice of Sale, the Bank Defendants' demurrer to the third and fifth causes of action was properly sustained.

The Orcillas have not carried their burden on appeal of proving there is a reasonable possibility they can cure the defects in the pleading by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Indeed, they do not even address potential amendments. Accordingly, they have not shown the trial court abused its discretion in denying them leave to amend counts 3 and 5. (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 173 [" 'Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend.' "].)

**F.    Count 6:  Violation of Section 2932.5**

Section 2932.5 states:  "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument.  The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded."

In count 6, the Orcillas allege the Bank Defendants violated section 2932.5 because BofA exercised the Deed of Trust's power of sale when no assignment of the Deed of Trust to BofA ever was recorded.  That claim fails because section 2932.5 has no application where, as here, the power of sale is conferred in a deed of trust.

"[S]ection 2932.5 is inapplicable to deeds of trust." (*Jenkins*, *supra*, 216 Cal.App.4th at p. 518.)  "Section 2932.5 requires the recorded assignment of a mortgage so that a prospective purchaser knows that the mortgagee has the authority to exercise the power of sale.  This is not necessary when a deed of trust is involved, as the trustee conducts the sale and transfers title." (*Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 336.)  In other words, "because a deed of trust does not convey a power of sale directly to the beneficiary-creditor, it is immaterial whether an assignment of a

18

promissory note was properly acknowledged and recorded when a deed of trust is used to secure a debt." (*Jenkins*, *supra*, at p. 518.)

The Orcillas acknowledge that the Note was secured by a deed of trust, not a mortgage. However, they contend the foregoing rule does not bar their claim for two reasons: (1) the Deed of Trust was void and unenforceable because the Note and Deed of Trust were "bifurcated," and (2) Quick Loan never transferred its interest in the Note to the Bank Defendants so they lacked power of sale. As an initial matter, it is unclear how either of those contentions, if true, would render a statute that applies only to mortgages applicable here. Moreover, the arguments are meritless.

The Orcillas' first contention is that the Deed of Trust is void because MERS was the beneficiary while Quick Loan held the Note. The Orcillas are correct that, "[o]rdinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust." (*Fontenot v*. *Wells Fargo Bank*, *N.A.* (2011) 198 Cal.App.4th 256, 267.) "Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender." (*Ibid*.) The Orcillas agreed to the terms of their Deed of Trust, which expressly identified MERS as beneficiary and authorized it to exercise all of the rights and interests of the lender, including the right to foreclose. They cannot not complain that those provisions of the Deed of Trust rendered it void.

Moreover, this court rejected an argument similar to the Orcillas' "bifurcation" argument in *Debrunner*. There, the plaintiff argued that where the beneficiary of the deed of trust is not in possession of the underlying promissory note, "the deed of trust is 'severed' from the promissory note and consequently is of no effect." (*Debrunner*, *supra*, 204 Cal.App.4th at p. 440.) We noted that " '[t]here is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure. Accordingly, the statute does not

19

require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale.' " (*Id*. at p. 441.) Given the exhaustive nature of the non-judicial foreclosure scheme, we decline to read additional requirements into the non-judicial foreclosure statute requiring the note and the deed of trust to be held by the same party. (See *Jenkins*, *supra*, 216 Cal.App.4th at p. 510.) Accordingly, there is no legal basis for the Orcillas' contention that the separation of the Note and Deed of Trust prevented ReconTrust from foreclosing on their property.

The Orcillas' second contention fails for similar reasons. The trustee, ReconTrust, initiated the non-judicial foreclosure sale, as permitted by section 2924, subdivision (a)(1). For the reasons discussed above, it was not required to hold a beneficial interest in the Note to do so.

We conclude count 6 fails because the Orcillas's Note was secured by a deed of trust, such that section 2932.5 does not apply. For the same reason, "it would be impossible for [the Orcillas] to cure the fundamental defects in [their sixth] cause of action by way of an amendment. Accordingly, the court's sustainment of [the Bank] Defendants' demurrer without leave to amend to [the Orcillas' sixth] cause of action was proper." (*Jenkins*, *supra*, 216 Cal.App.4th at p. 519.)

### G.    *Breach of Contract Claims*

"A cause of action for damages for breach of contract is comprised of the following elements:  (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388.) "Implicit in the element of damage is that the defendant's breach *caused* the plaintiff's damage." (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1352, citing § 3300.)

## 1. *Count 7*: *Alleged Breach of the Deed of Trust*

The Orcillas allege the Bank Defendants breached the Deed of Trust by failing to provide notice of default and by sending them a Notice of Trustee's Sale that did not correctly identify the date of the trustee's sale. On appeal, they contend the Bank Defendants also breached the Deed of Trust by selling the Property "without authority/power of sale." However, lack of power of sale was not alleged as a breach of the Deed of Trust in the second amended complaint. Even considering that argument, we conclude count 7 fails because the Orcillas do not allege how the Bank Defendants' breaches *caused* their alleged damage.

The Orcillas allege they were damaged "because they suffered the loss of their home," which in turn led to "a loss of employment and loss of health." They do not allege how they would have avoided foreclosure and the loss of the Property absent the alleged breaches. The Orcillas do not dispute that they are in default under the Note. They do not allege that they were willing and able to cure the default before the sale, but were prevented from doing so by the lack of any notice of default or by the inaccurate Notice of Trustee's Sale. Nor do they allege that the party with the power of sale would have refrained from foreclosing under the circumstances.

Because the Orcillas have failed to allege damages caused by the Bank Defendant's alleged contractual breaches, we conclude the trial court properly sustained the demurrer to count 7. We cannot conclude that the trial court abused its discretion when it denied the Orcillas leave to amend count 7, as the Orcillas do not contend on appeal that they can cure the defect discussed above by amendment.

## 2. *Count 9*: *Alleged Breach of the Oral Agreement to Postpone the Trustee's Sale*

The Orcillas allege BofA entered into an oral agreement with them, through Nicholas Agbabiaka at California Community Transitional Housing, Inc., to postpone the trustee's sale "in lieu of the Orcillas' application for a loan modification under HAMP."

21

The Orcillas further allege their HAMP loan modification application constituted consideration for BofA's promise to halt the sale.

"A contract is . . . an exchange of promises." (*In re Marriage of Feldner* (1995) 40 Cal.App.4th 617, 623.) In the Orcillas' view, the oral contract consisted of their promise to submit a HAMP loan modification application in exchange for BofA's promise to postpone the trustee's sale. But Agbabiaka's declaration contradicts that characterization of the underlying facts. Agbabiaka declared that he sent the Orcillas' HAMP application to BofA and that, *after confirming receipt of the application*, BofA said the trustee's sale would be postponed. Thus, Agbabiaka's declaration makes clear that there was no *bargained-for* exchange. Rather, the Orcillas' submitted their HAMP loan modification application prior to receiving any promise from BofA. BofA then made an unsolicited promise to postpone the sale without requiring anything of the Orcillas in exchange.

Consideration is an essential element of a contract. (See § 1550.) Section 1605 defines "good consideration" as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor . . . or any prejudice suffered, or agreed to be suffered, by [the promisee] . . . as an inducement to the promisor . . . ." "It is not enough, however, to confer a benefit or suffer prejudice for there to be consideration. . . . [T]he benefit or prejudice ' "must actually be bargained for as the exchange for the promise." ' " (*Steiner v. Thexton* (2010) 48 Cal.4th 411, 421; see *Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1248 (*Jara*) ["the Supreme Court [has] authoritatively adopted the concept of consideration as a bargained-for exchange"].)

Agbabiaka's declaration "clearly indicates that [BofA's] promise was gratuitous in the sense of being offered without expectation of any exchanged promise or performance." (*Jara*, *supra*, 121 Cal.App.4th at p. 1251.) Accordingly, the breach of oral contract claim fails because the Orcillas do not allege consideration sufficient to establish the existence of a contract. (*Garcia v. World Savings, FSB* (2010) 183

22

Cal.App.4th 1031, 1039 [oral promise to postpone a foreclosure sale held to be unenforceable because there was no exchange of true consideration].)

We are unpersuaded by the Orcillas' contention on appeal that the money BofA would have received under TARP in exchange for considering their HAMP application constituted consideration for the promise to postpone. That benefit would not have been conferred upon BofA by the Orcillas. And, again, the Orcillas had already submitted their HAMP loan modification application when BofA made its promise, making the promise gratuitous.

In sum, the trial court properly sustained the Bank Defendants' demurrer to count 9. Because the Orcillas do not suggest how they might cure the defect in their breach of oral contract claim by amendment, they have not shown the trial court abused its discretion in denying them leave to amend that cause of action.

### H. *Count 10*: *Promissory Estoppel*

The Orcillas' promissory estoppel claim is based on the same promise as their breach of an oral contract claim—BofA's alleged promise to postpone the trustee's sale while considering the Orcillas' HAMP loan modification application. The lack of consideration discussed above does not bar the Orcillas' promissory estoppel cause of action because the promissory estoppel doctrine makes "a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249.) Put differently, promissory estoppel " 'employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) " 'The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and

(4) the party asserting the estoppel must be injured by his reliance." ' " (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.)

The Orcillas' promissory estoppel claim fails because they fail to allege reliance. While they allege, in conclusory fashion, that they "relied on the promise" to postpone the trustee's sale, they do not allege any facts showing how they relied. For example, they do not allege that they abandoned plans to cure their default before the sale in reliance on the promise that the sale would not proceed. The Orcillas also fail to allege injury caused by any reliance on the promise. For instance, they do not allege that they could and would have cured their default before the sale had they known it was going to proceed. Accordingly, the trial court did not err in sustaining defendants' demurrer to the Orcillas' promissory estoppel claim.

## I.     *Count 8*:  *Fraud*

The elements of a cause of action for fraud are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage. (*Chapman v. Skype Inc*. (2013) 220 Cal.App.4th 217, 230-231 (*Chapman*).)  " ' "A plaintiff asserting fraud by misrepresentation is obliged to . . . ' "establish a complete causal relationship" between the alleged misrepresentations and the harm claimed to have resulted therefrom.' " [Citation.]'  [Citation.]  This requires a plaintiff to allege specific facts not only showing he or she actually and justifiably relied on the defendant's misrepresentations, but also how the actions he or she took in reliance on the defendant's misrepresentations caused the alleged damages.  [Citation.] [¶] ' " ' "Misrepresentation, even maliciously committed, does not support a cause of action unless the plaintiff suffered consequential damages." ' " [Citation.]'  [Citation.]  Indeed, ' " '[a]ssuming . . . a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to *unrelated causes*.' [Citation.]"  [Citation.]  If the defrauded plaintiff would have suffered the alleged damage even in the

24

absence of the fraudulent inducement, causation *cannot* be alleged and a fraud cause of action cannot be sustained.' " (*Rossberg v. Bank of America*, *N.A.* (2013) 219 Cal.App.4th 1481, 1499.)

Each element of a fraud claim must be pleaded with specificity. (*Chapman*, *supra*, 220 Cal.App.4th at p. 231.) "The specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made." (*West v. JPMorgan Chase Bank*, *N.A.* (2013) 214 Cal.App.4th 780, 793 (*West*).) However, "the requirement of specificity is relaxed when the allegations indicate that 'the defendant must necessarily possess full information concerning the facts of the controversy' [citations] or 'when the facts lie more in the knowledge of the' " defendant. (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158.) The specificity requirement serves two purposes: "to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of action." (*Chapman*, *supra*, at p. 231.)

The Orcillas' fraud cause of action is based on three distinct misrepresentations. We address each in turn and conclude that the Orcillas have failed to state a fraud claim based on any of the alleged misrepresentations.

First, the Orcillas allege the Bank Defendants misrepresented the date of sale in the Notice of Sale. But they fail to allege either reliance on that misrepresentation or any resulting damages. Aside from the conclusory allegation that the Orcillas relied on the Bank Defendants' representation regarding the date of sale, the complaint does not allege what, if anything, the Orcillas did in reliance on the representation. Nor does it allege a causal relationship between the alleged misrepresentation and their alleged damages (the loss of their home and associated costs). And we cannot reasonably infer that the Orcillas

25

could have avoided foreclosure but for the error in the Notice of Sale, given that the Orcillas do not deny defaulting on their loan and do not allege that they cured, attempted to cure, or could have cured the default.

Second, the Orcillas allege the Second Notice of Default was robo-signed. Again, they fail to allege acts or reliance or resulting damage. Nothing in the complaint suggests that the Orcillas could have prevented the foreclosure sale had the Second Notice of Default not been robo-signed.

Third, the Orcillas allege BofA misrepresented that the trustee's sale would not go forward in light of their HAMP loan modification application. They allege neither facts showing they relied on that misrepresentation, nor facts demonstrating that misrepresentation in any way prevented them from avoiding foreclosure. They also fail to allege "the name[] of the person[] who made the representation[ and] their authority to speak on behalf of [BofA]," as required by the specificity requirement. (*West*, *supra*, 214 Cal.App.4th at p. 793.)

In their opening brief, the Orcillas discuss a fourth misrepresentation—that the Bank Defendants owned the Orcillas' loan. The Orcillas did not adequately allege an actionable misrepresentation based on the Bank Defendants' claimed ownership of the Orcillas' loan for two reasons. First, that misrepresentation is not alleged in the operative complaint. Second, the Orcillas "fail to allege any facts showing that they suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process. The [Orcillas] do not dispute that they are in default under the [N]ote. The assignment of the [D]eed of [T]rust and the [N]ote did not change the [Orcillas'] obligations under the [N]ote, and there is no reason to believe that [Quick Loan] as the original lender would have refrained from foreclose in these circumstances. Absent any prejudice, the [Orcillas] have no standing to complain about any alleged lack of authority [to foreclose] or defective assignment" of either the Deed of Trust or the Note. (*Siliga v. Mortgage Electronic Registration Systems*, *Inc*. (2013) 219 Cal.App.4th 75, 85.)

26

For the foregoing reasons, we conclude the fraud claim fails. The trial court's refusal to grant the Orcillas leave to amend that cause of action was not an abuse of discretion, as the Orcillas have not demonstrated a reasonable possibility they could cure the defects discussed above by amendment.

### J. *Count 11*: *Quiet Title*

In count 11, the Orcillas sought quiet title against all defendants.

#### 1. *The Orcillas' Quiet Title Claim Against the Bank Defendants*

The Bank Defendants contend the quiet title action is defective as to them because they do not have an adverse claim to title. We agree.

"An element of a cause of action for quiet title is '[t]he adverse claims to the title of the plaintiff against which a determination is sought.' (Code Civ. Proc., § 761.020, subd. (c).)" (*West*, *supra*, 214 Cal.App.4th at p. 802.) On appeal, the Orcillas concede that "the Bank Defendants have no Adverse [*sic*] claims to title." That acknowledgement dooms their quiet title claim against the Bank Defendants. Moreover, the Orcillas attached the recorded trustee's deed to the second amended complaint. That deed establishes that the Property was sold to Big Sur, such that none of the Bank Defendants had an adverse claim to title to the property. (*Id*. at p. 803.)

#### 2. *The Orcillas' Quiet Title Claim Against Big Sur*

The quiet title action also was directed against Big Sur, which failed to file a respondent's brief in this appeal.[7] In support of its demurrer to the second amended complaint, Big Sur successfully requested the trial court take judicial notice of an order of the appellate division affirming judgment in favor of Big Sur in its unlawful detainer

---

[7] Under rule 8.220 of the California Rules of Court, we may decide the appeal on the record, the opening brief, and any oral argument by the Orcillas. Contrary to the Orcillas' contention, Big Sur has not "waived any adverse claim to title" by failing to file a respondent's brief.

action against the Orcillas. We conclude that Big Sur's unlawful detainer judgment bars the Orcillas' quiet title claim.

"[A] judgment in unlawful detainer usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title . . . ." (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 255 (*Vella*).) "A qualified exception to the rule that title cannot be tried in unlawful detainer is contained in Code of Civil Procedure section 1161a, which extends the summary eviction remedy beyond the conventional landlord-tenant relationship to include certain purchasers of property such as" Big Sur. (*Ibid.*) "[Code of Civil Procedure] [s]ection 1161a provides for a narrow and sharply focused examination of title. To establish that he is a proper plaintiff, one who has purchased property at a trustee's sale and seeks to evict the occupant in possession must show that he acquired the property at a regularly conducted sale and thereafter 'duly perfected' his title." (*Ibid.*; Code Civ. Proc., § 1161a, subd. (b)(3).) Accordingly, where, as here, an unlawful detainer action is brought pursuant to Code of Civil Procedure section 1161a, subdivision (b)(3), title is at issue. "Applying the traditional rule that a judgment rendered by a court of competent jurisdiction is conclusive as to any issues necessarily determined in that action, the courts have held that subsequent fraud or quiet title suits founded upon allegations of irregularity in a trustee's sale are barred by the prior unlawful detainer judgment." (*Vella*, *supra*, at p. 256; see *Bliss v. Security-First Nat. Bank* (1947) 81 Cal.App.2d 50, 58-59 [stipulated judgment arising from unlawful detainer action brought under Code Civ. Proc., § 1161a held to bar subsequent claim for quiet title].) "Where, however, the claim sought to be asserted in the second action encompasses activities not directly connected with the conduct of the sale, applicability of the res judicata doctrine, either as a complete bar to further proceedings or as a source of collateral estoppel, is much less clear." (*Vella*, *supra*, at p. 256.)

Here, the Orcillas' quiet title action against Big Sur is premised on allegations that the trustee's sale "was a sham" because of defects in the Notice of Default and Notice of Trustee's Sale.  Because the claim is "founded upon allegations of irregularity in [the] trustee's sale," it is "barred by [Big Sur's] prior unlawful detainer judgment." (*Vella*, *supra*, 20 Cal.3d at p. 256.)

The Orcillas contend that because Big Sur brought its unlawful detainer action as a limited civil case, the superior court lacked jurisdiction to adjudicate title to the Property, which is worth more than $25,000.  For that argument, they rely on *Vella*, in which the Supreme Court concluded that an unlawful detainer action brought in municipal court, which "had no jurisdiction . . . to adjudicate title to property worth considerably more than its $5,000 jurisdictional limit," did not bar a subsequent fraud action.  (*Vella*, *supra*, 20 Cal.3d at p. 257.)  We disagree with the Orcillas' contention.

There exist "two different ways in which a court may lack jurisdiction." (*People v. Ford* (2015) 61 Cal.4th 282, 286 (*Ford*).)  "A court lacks jurisdiction in a fundamental sense when it has no authority at all over the subject matter or the parties, or when it lacks any power to hear or determine the case." (*Ibid*.)  "If a court lacks such ' "fundamental" ' jurisdiction, its ruling is void." (*Ibid*.)  "Even when a court has fundamental jurisdiction, however," (*ibid*.) it may act " 'in excess of its jurisdiction' " (*id*. at p. 287) where it fails to act in the manner prescribed by the Constitution, a statute, or relevant case law.  A ruling issued in excess of a court's jurisdiction "is treated as valid until set aside." (*Ibid*.)

"Subject to exceptions not relevant here, a civil case in which the damages claimed are $25,000 or less is a limited civil action.  (Code Civ. Proc., § 86, subd. (a)(1).)  This includes an unlawful detainer proceeding in which the damages claimed are $25,000 or less.  (Code Civ. Proc., § 86, subd. (a)(4).)  In a limited civil action, the judgment cannot exceed $25,000.  (Code Civ. Proc., § 580, subd. (b)(1).)" (*AP-Colton LLC v. Ohaeri* (2015) 240 Cal.App.4th 500, 505.)  Code of Civil Procedure section 86 lists the

29

types of cases that qualify as limited civil cases; it does not include cases to try title to real property.

"In 1998 the California Constitution was amended to permit unification of the municipal and superior courts in each county into a single superior court system having original jurisdiction over all matters formerly designated as superior court and municipal court actions. [Citation.] . . . Now civil cases formerly within the jurisdiction of the municipal courts are classified as 'limited' civil cases, while matters formerly within the jurisdiction of the superior court[]s are classified as 'unlimited' civil action[s]." (*Ytuarte v. Superior Court* (2005) 129 Cal.App.4th 266, 274.) Because "the superior court [is] a court of general jurisdiction, . . . [it] did not lack the fundamental power to adjudicate" title to the Property. (*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1102.) Even if the court acted in excess of its jurisdiction, we treat its ruling as valid because it has not been set aside. (*Ford*, *supra*, 61 Cal.4th at p. 287.) Therefore, the Orcillas' quiet title action against Big Sur is barred by the prior unlawful detainer judgment.

In sum, the Orcillas failed to state a quiet title claim against any of the defendants. They do not contend they could amend that cause of action and thus do not carry their burden to show the trial court erred in denying them leave to amend.

### K. *Count 12*: *UCL*

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.' " (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320.) "The California Supreme Court has held the UCL's 'coverage is "sweeping, embracing ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' " ' " (*Jenkins*, *supra*, 216 Cal.App.4th at p. 520.) "A plaintiff may pursue a UCL action in order to obtain either (1) *injunctive relief*, 'the primary form of relief available under the UCL,' or (2) *restitution* ' "as may be necessary to restore to any person in interest any money or

30

property, real or personal, which may have been acquired by means of such unfair competition." ' " (*Ibid*.)

The Orcillas' twelfth cause of action alleges the Bank Defendants violated all three prongs of the UCL by (1) failing to rescind the Second Notice of Default, (2) failing to issue a valid notice of default in advance of the trustee's sale, and (3) foreclosing on the Property "absent chain of title." The Orcillas further allege that "[a]ll of the other violations and causes of action alleged herein also constitute unlawful and unfair business acts and serve as basis for the Orcillas' claim for unfair competition against the Bank Defendants."

"Business and Professions Code section 17204 restricts private standing to bring a UCL action to 'a person who has *suffered injury in fact* and has *lost money or property* as a *result* of the unfair competition.' " (*Jenkins*, *supra*, 216 Cal.App.4th at p. 521.) Thus, the UCL standing requirements include an economic injury prong and a causation prong. (*Id*. at pp. 521-522.) "A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered 'the same harm whether or not a defendant complied with the law.' " (*Id*. at p. 522.)

The Bank Defendants maintain the Orcillas lack standing because they fail to satisfy the causation prong. Specifically, the Bank Defendants argue that the Orcillas fail to allege their economic injury—loss of the Property—was caused by the Bank Defendants' conduct as opposed to by the Orcillas' default. The Orcillas respond that the Bank Defendants caused their loss by (1) enforcing an unconscionable loan and (2) foreclosing on a loan they did not own.

Liberally construed, count 12 and the allegations it incorporates allege that the Bank Defendants engaged in an unlawful or unfair business practice by enforcing the underlying loan and the loan modification agreement, both of which were unconscionable. (*Shadoan v. World Savings & Loan Assn*. (1990) 219 Cal.App.3d 97, 101-102 ["that a contractual provision is unconscionable may be relevant to the question

31

of whether a party who drafted—and seeks to enforce—the provision, has committed an unfair business practice"].) We have already concluded that the complaint adequately alleges that both agreements were unconscionable. With respect to causation, we can reasonably infer from the allegations that the Orcillas would not have lost the Property if the Bank Defendants had not enforced the unconscionable agreements by way of foreclosure proceedings.

We have some doubts as to whether the Orcillas have alleged facts entitling them to restitution or injunctive relief, the only remedies the UCL affords private plaintiffs. (See *Madrid v. Perot Systems Corp*. (2005) 130 Cal.App.4th 440, 452.) However, the Bank Defendants do not raise that issue and, accordingly, we consider it to have been forfeited.

For the foregoing reasons, we conclude the Orcillas have alleged an actionable unlawful or unfair business practice by the Bank Defendants as well as standing to assert a UCL claim. Therefore, the trial court erred in sustaining the Bank Defendants' demurrer to count 12.

### L.    *Count 13*:  *Declaratory Relief*

The Orcillas' final cause of action requests declaratory relief on the issue of the parties' rights to and interests in the Property. It alleges the "Bank Defendants have taken actions in violation of their statutory, legal and contractual duties . . . [which] have resulted in the wrongful foreclosure of the Subject Property" and that "[a]n actual dispute exists between the Orcillas and all Defendants as to the ownership of the Subject Property, and the validity . . . and amount . . . of the liens that were on the Subject Property prior to foreclosure."

"Code of Civil Procedure section 1060 authorizes '[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another . . .  in cases of *actual controversy relating to the legal rights and duties of the respective parties*, [to] bring an original action . . . for a declaration of his or her rights and duties . . . .' " (*Jenkins*, *supra*,

32

216 Cal.App.4th at p. 513.) "The purpose of a judicial declaration of rights in advance of an actual tortious incident is to enable the parties to shape their conduct so as to avoid a breach." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848.) Declaratory relief is therefore a remedy that " 'operates *prospectively*, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' " (*Ibid.*, italics added.)

Here, the Orcillas seek a remedy for a past wrong: the 2010 foreclosure sale. The complaint lacks any factual allegations indicating that an actual, present controversy exists between the parties. We therefore conclude that the Orcillas have failed to state a cause of action for declaratory relief and defendants' demurrer was properly sustained. (See *Jenkins*, *supra*, 216 Cal.App.4th at pp. 513-514.)

## IV.   DISPOSITION

The judgment is reversed and the matter is remanded to the superior court with directions to vacate its order sustaining the Bank Defendants' demurrer to the second amended complaint without leave to amend. The superior court is further directed to enter a new order (1) sustaining the demurrer as to counts 2 through 11 and 13 without leave to amend; (2) overruling the demurrer as to count 1 and count 12. Defendants to have 30 days to answer. The parties shall bear their own costs on appeal.

33

_____
                    Premo, J.


WE CONCUR:




_____
          Rushing, P.J.




_____
            Elia, J.




Orcilla et al. v. Big Sur, Inc., et al.
H040021

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 112CV225295 |
| --- | --- |
| Trial Judge: | Hon. Carol Overton |
| Counsel for Plaintiffs/Appellants:<br>Virgilio and Theodora Orcilla | In pro. per |
| Counsel for Defendant/Respondent:<br>Big Sur, Inc.<br><br>Bank of America, N.A.<br>ReconTrust Company, N.A.<br>Mortgage Electronic Registration<br>Systems, Inc. | Law Offices of Peter N. Brewer<br>Julia Ming Hua Wei<br><br>Bryan Cave<br>Andrea M. Hicks<br>Margaret K. Thies |

Orcilla et al. v. Big Sur, Inc., et al.
H040021