Filed 4/8/16  Kitajima v. HSBC Bank USA, Nat. Assn. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| DOCTOR O. KITAJIMA, et. al., | B258706 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC449238) |
| v. | |
| HSBC BANK USA, NATIONAL ASSOCIATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Law Office of Nick A. Alden and Nick A. Alden for Plaintiffs and Appellants.

Wright, Finlay & Zak, Jonathan M. Zak and Marvin B. Adviento, for Defendant and Respondent.

This is a foreclosure case, albeit one with a more complicated than usual procedural history. Plaintiffs Doctor O. Kitajima (Doctor Kitajima) and his wife Yoko Kitajima are owners of real property in Woodland Hills, California (the Property). Doctor Kitajima, but not Yoko Kitajima, signed a promissory note for a $744,000 loan, but *both* signed a deed of trust pledging the Property as security for the loan and authorizing the loan holder to foreclose in the event of a default on the obligation to make loan payments. Of course, that is what happened, this being a foreclosure case, and plaintiffs brought suit against defendant HSBC and others to quiet title, enjoin the foreclosure, and recover damages. During the procedural wrangling that ensued, plaintiffs obtained the entry of HSBC's default and then saw the default set aside because of a defect in their complaint. Plaintiffs opted to file an amended complaint, HSBC demurred, and the trial court sustained the demurrer without leave to amend. On appeal, plaintiffs challenge the trial court's decision to set aside the default, but that challenge is easily resolved. The primary issue we consider is therefore whether the trial court correctly sustained HSBC's demurrer without leave to amend.

I

A

We begin our recitation of the facts in 2006. Doctor Kitajima took out the aforementioned $744,000 loan from IndyMac Bank in June of that year, evidenced by a promissory note he signed. The terms of the promissory note stated a deed of trust dated the same date as the note would protect IndyMac Bank from possible losses in the event of a failure to repay the loan. That deed of trust designated "Doctor O Kitajima and Yoko Kitajima Husband and Wife as Joint Tenants" as the "Borrower," IndyMac Bank as the Lender,[1] Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for the

---

[1] The Federal Deposit Insurance Corporation, assisted by regulators at the Office of Thrift Supervision, took control of IndyMac Bank on July 11, 2008, in the midst of the financial crisis and transferred customer funds to a new chartered entity, IndyMac Federal FSB.

Lender and the Lender's successors and assigns, and First American Title Insurance Co. as the Trustee. Both Doctor Kitajima and Yoko Kitajima signed the deed of trust, and it conveyed to the Trustee rights in the Property with a power of sale in the event plaintiffs did not make payments required by the promissory note. The trust deed was recorded with the County of Los Angeles on June 29, 2006.

Plaintiffs thereafter failed to make the obligatory payments. Accordingly, in July 2008, Quality Loan Service Corporation (Quality) recorded a notice of default to commence non-judicial foreclosure proceedings. The notice declared the borrowers named in the trust deed, plaintiffs here, were in arrears by some $31,486. Just over a month after Quality recorded the notice of default, a "Substitution of Trustee" document was recorded, indicating IndyMac Bank had designated Quality to replace First American Title Insurance Co. as Trustee for plaintiffs' deed of trust.

Plaintiffs filed for bankruptcy protection after Quality recorded the notice of default. Ultimately, the bankruptcy court discharged the personal liabilities of plaintiffs and finally concluded the proceedings in March 2010.

In April and May 2010, assignments were recorded transferring the beneficial interest in plaintiffs' trust deed, which had since been pooled in a securities mortgage loan trust, to HSBC. More specifically, on April 6, 2010, an assignment of the deed of trust was recorded indicating OneWest Bank transferred its beneficial interest to HSBC. For reasons that are not clear but perhaps reflect a recognition that this assignment was defective, a second assignment of the trust deed was recorded on May 11, 2010, whereby MERS as nominee for IndyMac Bank transferred its beneficial interest in the trust deed to HSBC. Just over a week after this assignment to HSBC was recorded, Quality recorded a notice of trustee sale indicating the Property would soon be sold at public auction.

Plaintiffs thereafter filed for bankruptcy again, and the bankruptcy proceedings concluded in October 2010, when the case was dismissed by the bankruptcy court.

After their second bankruptcy petition had been dismissed, plaintiffs filed this action to stop the foreclosure sale of the Property and to seek damages from HSBC. The

3

original complaint, filed November 10, 2010, was unverified and asserted causes of action for quiet title, declaratory relief, and "violation of statutory duties," meaning various procedural requirements established by California's non-judicial foreclosure statutes.[2] Simultaneous with the filing of the complaint, plaintiffs also filed an ex parte application for a temporary restraining order and preliminary injunction seeking to block any further foreclosure proceedings. The application for an injunction was supported by a sworn declaration submitted by Doctor Kitajima.

For reasons we need not detail because they are not material to our resolution of this appeal, HSBC initially failed to respond to plaintiffs' complaint or their request for a preliminary injunction. The trial court issued the requested injunction on December 2, 2010, and it barred Quality and any of its successors or assigns from selling, encumbering, or transferring any interest in the Property pending the outcome of the case or further order of the court.

B

Nearly a year later, in August 2011, the trial court entered HSBC's default. HSBC then moved to set the default aside under Code of Civil Procedure section 473. At a hearing on HSBC's set aside motion, counsel for HSBC argued the default was the product of excusable neglect. He additionally argued there were "issues with the legal arguments in the complaint" because "it's a quiet title cause of action. It's not properly pled. It's not in the form of a verified complaint and the cloud remains on title . . . ." The trial court denied the motion—without prejudice—because there was insufficient evidence before the court demonstrating excusable neglect or mistake.

HSBC then filed a renewed motion to set aside the default judgment supported by a declaration with additional evidence. Plaintiffs opposed the renewed motion, and more

---

[2]    Plaintiffs' failure to verify the complaint had significant consequences later in the proceedings. As we explain, it caused the trial court to set aside HSBC's default.

significantly for our purposes, they also filed what they styled as a "notice of errata" stating: "Regrettably, Plaintiffs discovered that Plaintiffs' verification was inadvertently not included with Plaintiffs' complaint. Attached hereto as Exhibit 'A' is Plaintiffs' verification to the complaint."

Additional proceedings regarding whether the default should be set aside ensued in the trial court and via a writ proceeding in this court. We need not detail these events here; suffice it to say, that as of July 2012, the trial court ordered HSBC's default would stand.

With HSBC's default still in place (for the time being), a question arose as to whether HSBC should be permitted to participate in the default judgment prove-up proceedings. The trial court, relying on Code of Civil Procedure section 764.010, ruled HSBC was entitled to offer evidence against entry of a default judgment because plaintiffs' complaint included a quiet title action involving real property.

HSBC filed a pre-hearing brief opposing the entry of a default judgment, which it supported with a request for judicial notice of various documents (mostly recorded instruments), a declaration from an HSBC vice-president familiar with the bank's business records, and a declaration from the vice-president of OneWest Bank, the entity that serviced plaintiffs' loan for HSBC. HSBC's brief maintained plaintiffs' filing of the "errata" verification, to cure the defect in its quiet title cause of action,[3] operated as a substantive amendment to the complaint that "opened up" the default and entitled HSBC to file a responsive pleading. HSBC also argued no default judgment could be had on the complaint's quiet title cause of action because HSBC would establish it had physical possession of the original promissory note that had been endorsed in blank, making HSBC the "holder" of the note with a valid claim on the Property that served as the note's collateral. HSBC's brief and the accompanying declaration from the OneWest Bank

---

[3]     Code of Civil Procedure section 761.020 states that a complaint alleging a quiet title cause of action "shall be verified."

5

representative stated counsel for HSBC would bring the original promissory note to the default judgment prove-up hearing for inspection by plaintiffs' counsel or the court.

That is precisely what occurred.  At a hearing on April 10, 2013, counsel for HSBC stated he had the original promissory note present in court with a witness.  The parties and the trial court then discussed whether the court should decide the default judgment issue based on declarations without live testimony, and the following exchange occurred:

> [HSBC's attorney]:  We have, as I explained, the original note and original deed of trust.  If plaintiffs' counsel is willing to stipulate to our possession of the original, because we can't submit that with papers, we need to keep it.  So the only reason I need to have a witness here is to show the original note to the court, because that's going to end the whole debate, but—
>
> [Plaintiffs' attorney]:  Your Honor, I have no objection to them submitting a copy of the note if they have it here.  They'll show it to me, and if I'm satisfied, I don't have a problem with them submitting just a copy.
>
> [HSBC's attorney]:  That's fine, Your Honor.

At the court's suggestion, plaintiffs and HSBC agreed that they would submit evidence and further briefing on the propriety of entering a default judgment in writing, and return for another hearing if necessary.

Such a hearing was necessary, and at that hearing, the trial court ruled the filing of the "errata" verification amended the entire complaint and vitiated the previously entered default of HSBC.[4]  The court accordingly ordered HSBC to file a pleading responsive to plaintiffs' complaint within ten days.

---

[4]     Counsel for HSBC also confirmed on the record that he had shown the original promissory note to counsel for plaintiffs, pursuant to their agreement at the April 10, 2013, hearing.

6

Plaintiffs thereafter sought in this court writ review of the trial court's conclusion that plaintiffs' belated verification amended the complaint and thereby removed HSBC's status as a defaulted party. Specifically, plaintiffs filed two writ petitions presenting nearly identical arguments (the same arguments they again advance in this appeal): that HSBC had no right to participate in the default prove-up hearing, that filing an "errata verification" does not automatically open up a default, and that this court had somehow resolved the verification issue even though it was not briefed in the prior writ proceeding. We denied both petitions, concluding the trial court did not err by refusing to enter a default judgment. (*Kitajima v. Superior Court* (Sep. 13, 2013, B249817) [nonpub. order, citing cases supporting conclusion HSBC properly participated at the default prove-up hearing and that plaintiffs' belated filing of the verification operated as an amendment of the complaint that "opened up" the default]; *Kitajima v. Superior Court* (Oct. 31, 2013, B251497 [nonpub. order, citing same cases in response to repetitive application for same relief].)

C

Trial court proceedings continued during and after plaintiffs' pursuit of writ review. HSBC demurred to plaintiffs' original complaint, as belatedly verified, for failure to state a valid cause of action, and the trial court sustained the demurrer with leave to amend. Rather than stand on its original complaint and appeal the trial court's decision to sustain the demurrer, plaintiffs opted to prepare a First Amended Complaint, which they filed on November 22, 2013. That is the operative complaint we consider in this appeal.

The First Amended Complaint re-alleges the three causes of action included in the original complaint, quiet title, declaratory relief, and violation of statutory duties, plus a fourth: "cancellation of instrument." The preliminary allegations describe various of the relevant recorded documents, including the notice of default recorded by Quality in June

7

2008, which plaintiffs assert "is invalid because it was executed by a RoboSignor" and recorded before Quality had been substituted as the trustee.

The paragraphs that comprise the quiet title cause of action re-allege the preliminary allegations and outline the legal theory underlying the cause of action: "Plaintiffs are seeking to quiet title against the claims of defendants as follows: the property, which is a community asset[], was encumbered by Plaintiff, Doctor Kitajima alone. Mrs. Yoko Kitajima did not sign the promissory note. Under Family Code § 1102, '[b]oth spouses . . . must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered.'" Plaintiffs further state their "indebtedness under the promissory note executed by Doctor Kitajima had been discharged in bankruptcy," and as a result, HSBC cannot assert an interest in the Property.

The allegations concerning plaintiffs' second cause of action for declaratory relief are largely duplicative of the quiet title allegations. That is, plaintiffs assert the promissory note was Doctor Kitajima's personal debt because Yoko Kitajima did not sign it, and that the personal debt evidenced by the note was extinguished in plaintiffs' bankruptcy. Plaintiffs further allege HSBC failed to comply with the non-judicial foreclosure statutes in foreclosing on the Property, which caused plaintiffs damages.

Plaintiffs' third cause of action for "violation of statutory duties" alleges HSBC and Quality failed to comply with procedural obligations imposed by California's non-judicial foreclosure statutes, specifically, Civil Code sections 2923.5, 2924, 2924b, 2924c, and 2924f. Plaintiffs claim HSBC and Quality failed to contact them before recording the notice of default in 2008, failed to mail them a copy of the notice of default, failed to post and publish a copy of the notice of foreclosure sale on the Property or serve them with the same, and recorded the notice of default before a proper substitution of trustee was recorded. As a result of these procedural deficiencies, plaintiffs sought compensatory and punitive damages.

8

The fourth and final cause of action sought cancellation of the promissory note on the same theory alleged in the quiet title cause of action, namely, that the note was invalid because Yoko Kitajima did not sign it and that the debt the note evidenced had been discharged in bankruptcy.

HSBC demurred to the First Amended Complaint, contending the allegations failed to state a cause of action upon which relief could be granted. HSBC argued the First Amended Complaint was defective as to all causes of action because plaintiffs had not alleged they tendered, or had the ability to tender, the money owed under the promissory note and deed of trust. Regarding the quiet title cause of action, HSBC argued plaintiffs' theory of liability was not viable because it was the deed of trust signed by both Doctor and Yoko Kitajima that encumbered the Property, not the promissory note. HSBC further argued that the bankruptcy proceedings may have extinguished plaintiffs' personal liability for the promissory note debt, but that did not affect the validity of the deed of trust or HSBC's right to foreclose based on that deed. As to the declaratory relief and cancellation of instrument causes of action, HSBC argued they were merely duplicative of the other defective causes of action and failed for the same reasons. Finally, HSBC argued the violation of statutory duties cause of action was (a) moot because HSBC had by that time recorded a new set of notice documents, and (b) legally defective because injunctive relief, not damages, was the only authorized remedy for statutory violations.

Plaintiffs' opposition to HSBC's demurrer argued allegations concerning tender, or the ability to tender, were unnecessary because such allegations were necessary only in a suit challenging a completed foreclosure sale not, as here, a suit to enjoin a sale that had not yet occurred. Plaintiffs also responded to HSBC's arguments specific to each of the First Amended Complaint's causes of action. Finally, plaintiffs argued the trial court should again grant leave to amend if it sustained the demurrer, but plaintiffs did not explain how they would amend the pleading with new facts, nor did they submit a proposed Second Amended Complaint.

9

The trial court sustained HSBC's demurrer and declined to grant further leave to amend. The trial court ruled the quiet title cause of action was defective because HSBC had a valid claim on the Property under the deed of trust, which was the instrument that validly encumbered the Property—as it was signed by both plaintiffs. The trial court also ruled that plaintiffs' bankruptcy proceeding discharged only their personal liability for the $744,000 loan, not a creditor's right to proceed against property under the terms of a trust deed. Moreover, the trial court found plaintiffs lacked standing to bring "any assignment-based challenges" to the validity of the deed of trust. As to the declaratory relief cause of action, the trial court explained it was duplicative of the other causes of action, in the sense it was based on the same underlying facts (e.g., that the promissory note was not signed by Yoko Kitajima) insufficient to state a cause of action. On the violation of statutory duties cause of action, the court found it was moot and it was defective in any event for failure to allege prejudice from the alleged violations of the statutory notice procedures. Last, as to the cancellation of instrument (promissory note) cause of action, the trial court sustained the demurrer because it was based on the same theory the court found defective in ruling on the validity of the quiet title cause of action.

Having sustained the demurrer without leave to further amend, the trial court entered a judgment of dismissal with prejudice for HSBC. Plaintiffs timely filed a notice of appeal.


II

For reasons we will explain in greater detail, we affirm the trial court's judgment. We reject (again) plaintiffs' arguments concerning the previously entered default of HSBC, which lack merit and were forfeited in any event when plaintiffs filed a First Amended Complaint. We hold the trial court correctly sustained the demurrer to the First Amended Complaint because the well-pleaded allegations fail to state a valid cause of action. We further conclude the trial court did not abuse its discretion in denying leave to further amend the complaint. Plaintiffs made no showing in the trial court or this court to

10

carry their burden to show they could allege facts stating a valid cause of action; indeed, we invited the parties to submit briefs concerning the impact, if any, of our Supreme Court's recent decision in *Yvanova v. New Century Mortg. Corp.* (2016) 62 Cal.4th 919 (*Yvanova*), and we are convinced plaintiffs cannot state a claim under the principles announced in that decision.

## A

Plaintiffs present several arguments in an effort to establish the trial court erred when it vacated HSBC's status as a defaulted party rather than entering a default judgment. They claim: (1) HSBC should have been barred from contesting their application for a default judgment, or permitted to argue only the issue of rightful title without challenging the belated verification of the complaint; (2) the trial court could not vacate the default when plaintiffs filed the belated verification because the absence of a verified complaint was an issue the trial court had already impliedly determined when it maintained HSBC was in default status in June 2012; and (3) the court erred in vacating the default because there is no legal authority for the proposition that filing a belated verification opened up the default and permitted HSBC to file a responsive pleading.

Plaintiffs' default-related contentions are not properly before us. When the trial court vacated HSBC's default and sustained HSBC's demurrer to the belatedly verified complaint, plaintiffs could have elected to stand on that complaint and appeal from what would have been the ensuing dismissal. This they did not do. Instead, after unsuccessfully pursuing writ relief, plaintiffs filed a First Amended Complaint in November 2013. The filing of this First Amended Complaint, which added a cause of action and made other substantive changes, unquestionably vitiated the prior default and permitted HSBC to respond. (*Cole v. Roebling Const. Co.* (1909) 156 Cal. 443, 446 ["It is settled by a long line of decisions that where, after the default of a defendant has been entered, a complaint is amended in matter of substance as distinguished from mere matter of form, the amendment opens the default . . . ."]; *Jackson v. Bank of America* (1986) 188

11

Cal.App.3d 375, 390 (*Jackson*); *Brown v. Pacific Tel. & Tel. Co.* (1980) 105 Cal.App.3d 482, 486 (*Brown*).) Because plaintiffs now appeal from the trial court's ruling on HSBC's demurrer to the First Amended Complaint, plaintiffs have forfeited their ability to challenge the court's prior ruling vacating the default; it is indisputable that HSBC had the right to demur to the First Amended Complaint. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884 [appellate court will only consider amended complaint, which supplants all prior complaints]; *Alfaro v. Community Housing Imp. System & Planning Ass'n, Inc.* (2009) 171 Cal.App.4th 1356, 1372 [referencing same rule].)

Even if plaintiffs could again raise the default-related arguments they made in the prior writ proceedings, which we have judicially noticed, we would again reject them on the merits as we did previously. HSBC was entitled to contest the default judgment, including the complaint that would have been legally defective absent the belated verification; the verification did operate as an amendment to the complaint; and well-established authority holds an amendment to the complaint opens up a default and gives the previously defaulted party an opportunity to contest the complaint's allegations. (Code Civ. Proc., §§ 761.020, 764.010; *Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 940-942 [defaulted defendant entitled to participate in evidentiary hearing regarding default judgment]; *Harbour Vista, LLC v. HSBC Mortg. Services Inc.* (2011) 201 Cal.App.4th 1496, 1501-1507; *Jackson, supra*, 188 Cal.App.3d at p. 390; *Brown*, *supra*, 105 Cal.App.3d at p. 486 ["There is decisional law which holds that if, after a defendant's default has been entered, a plaintiff amends his complaint in some substantial manner, he 'opens the default' and defendant may then plead in timely fashion to the new complaint"]; see also *Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1866 [quiet title cause of action defective because complaint not verified].)

B

Plaintiffs argue the trial court erred in sustaining HSBC's demurrer to all of the First Amended Complaint's causes of action. "In determining whether plaintiffs properly

12

stated a claim for relief, our standard of review is clear: "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.' [Citation.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; accord, *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 536 [declining to treat "wholly conclusory" assertions in complaint as true].)

A court may disregard allegations in a complaint if they are negated by judicially noticeable facts or inconsistent with exhibits attached to a complaint. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [complaint otherwise good on its face subject to demurrer when facts properly subject to judicial notice render it defective]; *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052; *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1626-1627.) And "[a] judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; accord, *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1271.)

1

The trial court correctly sustained the demurrer to the quiet title cause of action because HSBC has a valid claim on the Property. Contrary to plaintiffs' contentions, the absence of Yoko Kitajima's signature on the promissory note is of no legal consequence, and plaintiffs' subsequent bankruptcy proceedings did not extinguish HSBC's right to foreclose on the Property.

We accept as true the alleged facts that both plaintiffs signed the deed of trust but only Doctor Kitajima signed the promissory note. However, we need not and do not

13

accept the legal contention that the absence of Yoko Kitajima's signature on the promissory note renders the note or deed of trust "voidable." Family Code section 1102 provides that "both spouses . . . must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered." The deed of trust is the document that encumbered the Property, and that document was signed by both plaintiffs, in compliance with Family Code section 1102.[5] (See, e.g., *State ex rel. Bowen v. Bank of America Corp.* (2005) 126 Cal.App.4th 225, 231 ["'The promissory note is a promise the debtor/trustor makes to the lender/beneficiary to repay the loan on the terms indicated in the note. [Citation.] A deed of trust is the document which evidences the debt that is secured by a particular piece of real property'"].) Furthermore, the terms of the deed of trust were such that Yoko Kitajima's signature on that document operated as a ratification of the promissory note obligation in any event. (See generally *Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 74-75; *Hulsman v. Ireland* (1928) 205 Cal. 345, 351-352 [husband bound by wife's act he later ratified]; *Stegeman v. Vandeventer* (1943) 57 Cal.App.2d 753, 759.) The trust deed defined the term "Borrower" to mean "Doctor O Kitajima and Yoko Kitajima Husband and Wife as Joint Tenants," and defined the term "Note" to mean "the promissory note signed by Borrower and dated June 23, 2006," by which "Borrower owes Lender" $744,000 plus interest.

We also accept as true plaintiffs' factual allegations that they filed for bankruptcy in 2008, that the bankruptcy proceedings were converted to Chapter 7 proceedings, and that they were discharged. We do not accept, however, the legal contentions in paragraphs 22 and 23 of the First Amended Complaint that HSBC has, at best, an unsecured individual note and that HSBC cannot assert an interest in the Property because

---

[5]    Although plaintiffs did not attach the deed of trust as an exhibit to their First Amended Complaint, HSBC submitted a copy of the deed with the request for judicial notice it filed in connection with its demurrer to the First Amended Complaint.

14

plaintiffs' indebtedness has been discharged in bankruptcy. To the contrary, the recorded deed of trust signed by both plaintiffs gave rise to a lien on the Property that is unaffected by the discharge of plaintiffs' debts in Chapter 7 bankruptcy proceedings. (*Johnson v. Home State Bank* (1991) 501 U.S. 78, 82-83 [defaulting debtor can protect himself from personal liability by obtaining discharge in Chapter 7 liquidation, but discharge extinguishes only personal liability and creditor retains right to foreclose on mortgage]; see also *Monterey S.P. Partnership v. W.L. Bangham, Inc.* (1989) 49 Cal.3d 454, 460 ["In practical effect, if not in legal parlance, a deed of trust is a lien on the property"]; *In re Cortez* (Bankr. 9th Cir. 1995) 191 B.R. 174, 177 ["It is well settled that valid, perfected liens and other secured interests pass through bankruptcy unaffected"].)

Because the twin theories intended to serve as the predicate for plaintiffs' quiet title action fail as a matter of law, the trial court correctly concluded the cause of action fails to state facts sufficient to constitute a valid cause of action.[6]

2

Plaintiffs' cause of action for declaratory relief also fails to state a valid claim. It repeats the same allegations concerning Doctor Kitajima's execution of the promissory note and plaintiffs' discharge in bankruptcy, and those allegations are legally insufficient for the reasons we have already described. Plaintiffs also state, in paragraph 29, that they seek a court order declaring "all the assignments" are null and void. On its own, this is a

---

[6] The quiet title cause of action also fails because it does not allege plaintiffs have tendered the amount due on the debt for which the trust deed serves as security. (*Shimpones v. Stickney* (1934) 219 Cal. 637, 649 ["It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured"]; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 87 [cases holding tender not required where action seeks to enjoin uncompleted foreclosure sale are inapplicable because the plaintiff "sought to quiet title to the property, which he cannot do without paying the outstanding indebtedness"].)

mere conclusory allegation that cannot support a cause of action. (*Blank v. Kirwan*, *supra*, 39 Cal.3d 311 at p. 318; *Melton v. Boustred*, *supra*,183 Cal.App.4th at p. 536.)

The declaratory relief cause of action also incorporates, however, paragraph 16 of the complaint in which plaintiffs allege the following: "As of August 13, 2009, both Plaintiffs had discharged in bankruptcy the personal note executed by Dr. Kitajima in favor of IndyMac. As a result, MERS no longer had any interest in the promissory note of the Deed of Trust to assign to HSBC. Thus, MERS's assignment of the Deed of Trust and the note to HSBC, on May 11, 2010, is invalid." That is, plaintiffs concede MERS assigned the trust deed to HSBC—the assignment is attached as an exhibit to the complaint—but they contend the assignment is invalid because plaintiffs' bankruptcy deprived MERS of any interest in the promissory note. This allegation is doubly deficient.

First, as we have already explained, plaintiffs discharged their personal liabilities in the bankruptcy proceeding but did not extinguish a creditor's right to foreclose via the lien created by the deed of trust they signed. Second, it was not necessary for MERS to transfer an interest in the promissory note (*Debrunner v. Deutsche Bank Nat. Trust Co.* (2012) 204 Cal.App.4th 433, 441 (*Debrunner*)), and even if it were, the note is endorsed in blank, which makes the person or entity that holds it, qua holder, the beneficiary. (See *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1495-1496.) Nowhere do plaintiffs allege HSBC is not in fact the holder of the promissory note, nor could they—plaintiffs' counsel had already inspected the original note in HSBC's possession and agreed that a copy of the note could be used in lieu of the original before attaching the note as an exhibit to the First Amended Complaint. The trial court was therefore correct to sustain HSBC's demurrer to the cause of action for declaratory relief.

16

Plaintiffs' cause of action for alleged violations of certain notice requirements under California's non-judicial foreclosure scheme is doomed by the failure to allege, and indeed the inability to allege, prejudice from the asserted lack of notice. A plaintiff alleging non-compliance with statutory notice provisions must adequately allege that he or she was prejudiced by the notice deficiencies. (*Debrunner*, *supra*, 204 Cal.App.4th at pp. 443-444 [rejecting, for failure to show prejudice, allegations that a notice of default was defective because it listed a trustee that had not yet been named in a recorded substitution of the entity as trustee]; see also *Orcilla v. Big Sur, Inc.*(2016) 244 Cal.App.4th 982; *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700.) Although plaintiffs assert, among other things, that HSBC did not contact them before instituting foreclosure proceedings and that Quality had not been named as the trustee for plaintiffs' trust deed when it recorded the initial notice of default in 2008, plaintiffs nowhere allege how they were prejudiced by the alleged failure to comply with the statutory notice provisions.

Nor do we see how plaintiffs could so allege because they long ago obtained the sole remedy to which they would be entitled if a violation of the notice provisions were proven, namely, a preliminary injunction that postponed the foreclosure sale, which still has yet to occur. (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1616; *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 235 ["[U]nder the plain language of section 2923.5, read in conjunction with section 2924g, the *only* remedy provided is a postponement of the sale before it happens"].) For nearly the last six years, plaintiffs have known of HSBC's expressed intent to foreclose on the Property and had the opportunity to pay the debt owing to avert foreclosure; this defeats any ability to allege prejudice from lack of notice. (Cf. *Tully v. World Savings & Loan Assn.* (1997) 56 Cal.App.4th 654, 664 [debtors bear responsibility to remain informed about the status of their property and further notice under the non-judicial foreclosure statutes is unnecessary after a mandatory bankruptcy stay is lifted].) Further, HSBC has rescinded the most

recent notice of default dated May 2, 2013, meaning a new notice of default will issue if HSBC again commences foreclosure proceedings.

4

Finally, plaintiffs' cause of action for cancellation of the promissory note relies on the same facts and theory associated with its quiet title and declaratory relief causes of action, namely, that the absence of Yoko Kitajima's signature on the promissory note and plaintiffs' discharge in bankruptcy proceedings constitute a valid factual predicate for cancellation of the promissory note. For the reasons we have already described in connection with our discussion of the quiet title action, these allegations fail to state a proper cause of action. We therefore hold the trial court correctly sustained HSBC's demurrer to the cancellation of instrument cause of action and, indeed, to all of the causes of action in the First Amended Complaint.

C

In their briefs on appeal, plaintiffs make perfunctory arguments in support of the contention that the trial court abused its discretion in denying leave to amend even if it correctly sustained HSBC's demurrer to the First Amended Complaint.

Where, as here, a trial court sustains a demurrer without leave to amend, we review the decision not to allow further amendment for an abuse of discretion. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 889-890.) We decide whether there is a reasonable possibility that the defect or defects in the complaint can be cured by an amendment; if so, the court has abused its discretion and we reverse. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

"The burden of proving [a] reasonable possibility [of a curative amendment] falls squarely on the plaintiff." (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action. [Citations.] Absent

18

such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Cantu v. Resolution Trust Corp.*, *supra*, 4 Cal.App.4th at p. 890; accord, *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of the pleading].)

So far as the record demonstrates, plaintiffs made no showing in the trial court regarding how they could further amend their complaint to state a valid cause of action, nor did they file a proposed Second Amended Complaint. Before us, plaintiffs likewise have identified no facts they could allege to resuscitate the defects in their complaint and they instead rest only on the unsupported and incorrect assertion that "[i]n the case at bar, Plaintiffs demonstrated an ability to amend." This is insufficient to demonstrate the trial court abused its discretion in denying further leave to amend. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 ["Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 799, 784-785.)

We did, however, seek supplemental briefs to explore whether plaintiffs could allege a viable cause of action under *Yvanova*, *supra*, 62 Cal.4th 919, including whether plaintiffs could state a cause of action for the tort of wrongful foreclosure. *Yvanova* does not help plaintiffs; the Supreme Court addressed only standing to challenge a completed foreclosure sale and reserved decision on "whether, or under what circumstances, a borrower may bring an action for injunctive or declaratory relief to prevent a foreclosure sale from going forward." (*Id.* at p. 934.) But even if the foreclosure sale of the Property had already been conducted, the principles *Yvanova* identifies would be of no assistance to plaintiffs. Their theory is that the promissory note and deed of trust are merely voidable, whereas *Yvanova* only permits a plaintiff to allege liability based on a theory that an assignment of a trust deed was in fact void. (*Id.* at p. 936.) Moreover, any

assignment-based challenge plaintiffs might mount would fail in any event because HSBC is the undisputed holder of the promissory note and, as *Yvanova* recognizes, a "deed of trust . . . is inseparable from the note it secures, and follows it even without a separate assignment."[7] (*Id.* at p. 927.)

DISPOSITION

The judgment is affirmed. Defendant HSBC shall recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

TURNER, P.J.

KUMAR, J.[*]

---

[7]    Of course, there is also judicially noticeable evidence in the record indicating plaintiffs' trust deed was assigned to HSBC, including via the document recorded with the County of Los Angeles on March 25, 2013.

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.