Filed 9/7/23  Rama Fund v. Comstock CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE RAMA FUND, LLC, | B314371 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21SMCV00282) |
| v. | |
| ADRIAN COMSTOCK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Harry J. Ford III, Judge.  Affirmed.

Shaw Koepke & Satter, Complex Appellate Litigation Group, Jens B. Koepke and Anne M. Huarte for Defendant and Appellant.

Klapach & Klapach and Joseph S. Klapach for Plaintiff and Respondent.

————————————

Defendant and appellant Adrian Comstock defaulted on an over $3.5 million loan that was secured by a deed of trust. Comstock subsequently lost the property in a nonjudicial foreclosure sale. Plaintiff and respondent, the Rama Fund, LLC (Rama), the loan beneficiary, purchased the property. Rama filed an unlawful detainer action to evict Comstock when he refused to vacate the property. Rama then moved for summary judgment. Comstock opposed the motion, arguing that the foreclosure proceedings were invalid because they were based on an inadequate notice of default under Civil Code section 2924.[1] On appeal, Comstock asserts a new theory that the foreclosure proceedings were invalid pursuant to section 2953. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Underlying Loan*

In July 2018, Comstock took out a $3,587,500 loan from Athas Capital Group, Inc. (Athas Capital Group) to purchase a property in Beverly Hills. The loan was secured by a deed of trust. Athas Capital Group assigned the beneficiary interest under the deed of trust to Rama. Rama subsequently recorded a substitution of trustee appointing California TD Specialists as the substituted trustee under the deed of trust.

### *Comstock's Default*

Comstock was required to repay the entire loan by August 1, 2019. He failed to do so. In November 2019, California TD Specialists recorded a Notice of Default and Election to Sell Under Deed of Trust. The notice stated the default under Comstock's loan was "[t]he balance of the principal and interest

---

[1] All further undesignated statutory references are to the Civil Code.

2

which became due on 8/1/2019, along with late charges, foreclosure fees and costs and legal fees plus interest and/or advances that have become due." The total amount due was $4,161,952.98.

In February 2020, California TD Specialists recorded a notice of trustee's sale, with a foreclosure sale date in March 2020. Comstock and Rama agreed to postpone the sale several times, ultimately to November 2020.

***The Loan Extension Agreement***

In November 2020, Comstock, Rama, and Athas Capital Group entered into a "Loan Extension Agreement."

The loan extension agreement provided that "[s]ubject to RAMA's timely receipt of the payment identified in section 2.a.i. below, the Loan Documents are hereby amended and modified to extend the Maturity Date of the Loan to December 1, 2021." Section 2.a.i of the agreement required that "[b]y 5:00 p.m. on November 20, 2020, Comstock shall make a payment to RAMA in the amount of $138,333.34 ('Initial Installment')." This was the first of three required "Principal Reduction" payments (hereinafter installment payments).

After Comstock timely paid the initial installment, Rama would postpone the foreclosure sale to a date on or after January 4, 2021.

Comstock was to make a second installment payment of $138,333.33 to Rama by 5:00 p.m. on January 1, 2021. The agreement additionally required him to make "monthly interest-only installment payments under the Note beginning December 1, 2020 . . . ." The agreement provided that "[i]f the Second Installment payment and the monthly interest[-]only payment(s) [are] made timely, Rama shall postpone the Sale to a date on or

3

after February 4, 2021." The third installment payment was due by February 1, 2021.

Pursuant to the agreement, if Comstock timely paid a third installment payment and all the monthly interest-only payments, "within two (2) days of its receipt of the Principal Reduction Payment in full, RAMA shall cause to be recorded in the County Recorder's Office for the County of Los Angeles a Notice of Rescission pursuant to which RAMA shall rescind the [Notice of Default] and [Notice of Trustee's Sale]."

In a section titled "Release by RAMA," the loan extension agreement stated: "For the avoidance of doubt, nothing in this Release by RAMA prohibits RAMA from proceeding with the Sale, or exercising any other rights provided for in the Loan Documents, in the event Comstock does not make all of [the] payments required by section 2.a., 2.b., and 2.c." The payments required by sections 2.a, 2.b. and 2.c. are the three installment payments.

It is undisputed that Comstock made the first installment payment on time, but he failed to pay the second installment payment and monthly interest-only payment by the January 1, 2021 deadline.

### Foreclosure Sale and Unlawful Detainer Action

After Comstock failed to make the second installment payment and monthly interest payment by January 1, 2021, California TD Specialists conducted a foreclosure sale on January 6, 2021. Rama obtained title to the property.

When Comstock refused to vacate the property, Rama filed an unlawful detainer action to evict him under Code of Civil

4

Procedure section 1161a.[2]  Rama moved for summary judgment, arguing it properly obtained title to the property at the nonjudicial foreclosure sale.  The trial court agreed, finding that Rama had established, by undisputed facts, all three conditions required to prevail on an unlawful detainer action under Code of Civil Procedure section 1161a, subdivision (b)(3).  The court found that Rama established (1) a proper trustee's sale in accordance with section 2924, (2) duly perfected title, and (3) service on Comstock of a three-day notice to quit.

Comstock opposed the motion.  He asserted that because the 2019 notice of default was the only basis for the foreclosure sale, and the 2019 default was cured by the loan extension agreement, the sale violated section 2924, which requires a notice of default that "set[s] forth the nature of each breach."  (§ 2924, subd. (a)(1)(C).)  After examining the terms of the loan extension agreement, the trial court found no support for Comstock's claim that the agreement cured the default referenced in the 2019 notice of default or that the agreement otherwise rendered the notice of default ineffective or void.

The trial court also rejected Comstock's argument that his eviction would violate the public policy against forfeitures because he was not a renter, he did not file a verified petition for relief, he had made a material misrepresentation in his loan application, and he failed to submit evidence showing he was

---

[2]     Although Comstock agreed he would not live at the property while the loan was pending, he had, in fact, occupied the home.

5

ready and able to make " 'full compensation' " to Rama as reflected in the 2019 notice of default.[3]

Comstock timely appealed.

## DISCUSSION

Comstock asserts three arguments on appeal. As in the trial court, Comstock contends the foreclosure sale was void because the notice of default referred to Comstock's failure to pay the entire original debt by the maturity date of August 1, 2019, and not his subsequent failure to pay the second installment payment under the loan extension agreement. However, for the first time on appeal, Comstock also argues the loan extension agreement was in connection with the "making of or renewing of" a loan secured by a deed of trust under section 2953, thus any waiver of his rights to a new notice of default based on a breach of the loan extension agreement was void. Finally, Comstock claims the trial court abused its discretion by excluding his declaration stating he was willing and able to tender all debts due under the loan extension agreement. We find no error and affirm.

## I.    Standard of Review

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) When a plaintiff moves for summary judgment, the "plaintiff bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and

---

[3]    The trial court rejected other arguments by Comstock, not at issue in this appeal, as outside the scope of an unlawful detainer proceeding.

6

hence that 'there is no defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; *Beebe v. Wonderful Pistachios & Almonds LLC* (2023) 92 Cal.App.5th 351, 369.) Once the plaintiff has met its burden, "the burden shifts to the defendant or cross-defendant to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The defendant or cross-defendant shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1).)

" ' " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' [Citation.]" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

Our standard of review for interpreting a contract is also de novo. (*Welch v. Welch* (2022) 79 Cal.App.5th 283, 296.)

## II. Comstock Did Not Raise a Triable Issue of Fact as to the Notice of Default

### A. Nonjudicial foreclosure

In California, a deed of trust is the primary real estate security device. (*Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 125.) "Under a deed of trust, 'the borrower, or "trustor," conveys nominal title to property to an intermediary, the "trustee," who holds that title as security for repayment of the

7

loan to the lender, or "beneficiary." ' [Citation.]" (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 995 (*Orcilla*).) "If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale." (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.)

"Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) The " ' "purposes of [the Civil Code's] comprehensive scheme [governing nonjudicial foreclosures] are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." ' [Citation.]" (*Orcilla, supra*, 244 Cal.App.4th at p. 995.)

The foreclosure process begins with the "trustee, mortgagee, or beneficiary, or any of their authorized agents" recording a notice of default and an election to sell. (§ 2924, subd. (a)(1).) The notice of default must include a "statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred" and a "statement setting forth the nature of each breach actually known to the beneficiary and of [his or her] election to sell or cause to be sold the property to satisfy [the] obligation . . . that is in default." (§ 2924, subd. (a)(1)(B)–(C).) Three months after recording the notice of default, a notice of sale may be published, posted, mailed, and recorded 20 days before the sale date. (§§ 2924, subd. (a)(3), 2924f.)

8

Before the sale, " 'section 2924c allows the borrower to cure the default, reinstate the loan, and avoid foreclosure by paying the amount in default, plus specified fees and expenses.' [Citation.]" (*Shetty v. HSBC Bank USA, N.A.* (2023) 91 Cal.App.5th 796, 801.) To cure the default, the borrower must pay "the entire amount due" other than the portion of the principal that would not have been due if no default had occurred. (§ 2924c, subd. (a)(1); *Taniguchi v. Restoration Homes LLC* (2019) 43 Cal.App.5th 478, 483 (*Taniguchi*).) The borrower may make back payments to cure the default and prevent foreclosure until five business days prior to the date of sale. (§ 2924c, subds. (a)(1), (e).) If the borrower "does cure the default, the beneficiary . . . shall, within 21 days following the reinstatement, execute and deliver to the trustee a notice of rescission that rescinds the declaration of default and demand for sale and advises the trustee of the date of reinstatement." (§ 2924c, subd. (a)(2).)

When a property is sold at a nonjudicial foreclosure sale, " '[i]f the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly . . . .' " (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 87.)

**B.     Unlawful detainer proceedings**

Unlawful detainer proceedings under Code of Civil Procedure section 1161a require the party who purchased property at a trustee's sale and is seeking to evict the property's occupant to establish that the party " 'acquired the property at a regularly conducted sale and thereafter "duly perfected" his

title.' " (*Orcilla, supra*, 244 Cal.App.4th at p. 1011, citing *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255; Code Civ. Proc., § 1161a, subd. (b)(3).)

### C. Comstock did not cure his August 2019 default, thus no new notice of default was required

Comstock argues the foreclosure sale was ineffective because he cured the 2019 default by making the first installment payment under the loan extension agreement, and the 2019 notice of default did not mention his failure to pay the second installment payment. He asserts that prior to the trustee's sale, Rama was required to issue a new notice of default in order to foreclose based on Comstock's breach of the loan extension agreement. We disagree. Paying the first installment payment did not cure the 2019 default, thus Rama was not required to record a new notice of default before the foreclosure sale.

As the court observed in *Orcilla, supra*, 244 Cal.App.4th at page 1001, section 2924c does not specifically define " 'cure[,]' [but] Black's Law Dictionary defines 'cure of default' " as " '[a] debtor's act to correct its failure to perform, or to refrain from performing, according to the terms of an agreement.' [Citation.]" Section 2924c instructs that a "cure" requires the payment of "the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default . . . , (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses . . . that are actually incurred in enforcing the terms of the obligation . . . and trustee's or attorney's fees . . .

10

other than the portion of principal as would not then be due had no default occurred . . . ."  (§ 2924c, subd. (a)(1).)

Entering into a loan modification agreement, or the extension of a loan, does not automatically or necessarily cure a borrower's preexisting default.  (*Orcilla*, *supra*, 244 Cal.App.4th at pp. 1001–1002; *Taniguchi*, *supra*, 43 Cal.App.5th at p. 488.) Instead, courts look to the parties' agreement to determine the steps, if any, the borrower must take beyond executing the subsequent agreement.

*Orcilla* is instructive.  In *Orcilla*, after the borrowers defaulted on a home loan, the parties entered into an agreement that modified the loan's principal balance and monthly payment. (*Orcilla*, *supra*, 244 Cal.App.4th at p. 991.)  The court rejected the borrowers' argument that by entering into the agreement they cured their prior default under section 2924c, such that the lender was required to rescind the original notice of default and issue a new one prior to the trustee's sale.  (*Id.* at pp. 1001–1002.) The court reasoned that while language stating " '[t]his agreement will bring your loan current,' " could, in isolation, be viewed as indicating that merely entering into the agreement cured the past default, "more specific language" in the agreement "foreclose[d] that interpretation by making clear that ongoing foreclosure proceedings would continue without additional notice if the terms and conditions of the letter were not satisfied.  One of those terms required [the borrower] to make monthly payments of $4,627.47 beginning September 1, 2008." (*Id.* at p. 1001.) Because the Orcillas did not allege they made the monthly payments, the court concluded they had not "adequately allege[d] violations of section 2924c, subdivision (a)(2) and section 2924, subdivision (a)(1)." (*Ibid.*)

11

With this in mind, we turn to the loan extension agreement to determine whether the parties intended that Comstock's payment of the first installment payment under the loan extension agreement would "cure" the default identified in the November 2019 notice of default. "Contract interpretation is a question of law." (*Canyon Vineyard Estates I, LLC v. DeJoria* (2022) 78 Cal.App.5th 995, 1003 (*Canyon Vineyard Estates I, LLC*).) When interpreting a contract, "the intention of the parties is to be ascertained from the writing alone, if possible." (§ 1639.) If a contract's language is clear and unambiguous, intent is determined solely by the language within the four corners of the contract. (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (§ 1641.) "Particular clauses of a contract are subordinate to its general intent." (§ 1650.)

Nothing in the text of the loan extension agreement indicates Comstock would cure his August 2019 default merely by entering into the agreement and paying his first installment payment. Instead, the agreement required Rama to file a notice of rescission of the notice of default and the notice of trustee's sale only "[i]f the Third Installment payment and the monthly interest[-]only payments are made timely." It is undisputed Comstock did not make these payments. The agreement also states that if Comstock timely paid the "[i]nitial [i]nstallment" then "RAMA shall postpone the Sale to a date on or after January 4, 2021." Together, these sections of the loan extension agreement establish that the first installment payment did not cure the default but rather temporarily postponed the sale, and the default would be cured only after Comstock made the third

12

installment payment and the monthly interest-only payments. Moreover, the agreement provides that nothing "prohibits RAMA from proceeding with the Sale . . . in the event Comstock does not make all of the payments required by section 2.a, 2.b, and 2.c." The second installment payment that Comstock failed to make on time is in section 2.a. Read as a whole, the loan extension agreement did not permit Comstock to cure his 2019 default by paying the first installment payment.

Comstock relies on the portion of the agreement stating that the maturity date of the loan would be postponed until December 1, 2021, if he timely paid the first installment payment, to argue that he cured the default with that first installment payment.[4] Yet, when viewed in the context of the more specific language in the agreement regarding rescission of the notice of default only after the third installment payment, this language alone cannot mean that Comstock "cured" his prior default by making the first installment payment. If this were true, the agreement would provide for rescission of the notice of default after the first installment payment instead of after the third. (*Canyon Vineyard Estates I, LLC*, *supra*, 78 Cal.App.5th at p. 1003 [we must avoid an interpretation that would result in an absurdity]; see also section 2924c, subd. (a)(2) [if the borrower "does cure the default, the beneficiary . . . shall, within 21 days . . . execute and deliver to the trustee a notice of rescission

---

[4] This is date by which Comstock was required to make a "lump sum payment equal to the outstanding Principal balance of the Loan plus all accrued interest, and any fees and other charges that may then be due and payable pursuant to the Note, Deed of Trust[,] and related Loan Documents." The loan extension agreement defines these documents corresponding to the original July 3, 2018 loan.

that rescinds the declaration of default and demand for sale . . . . The trustee shall cause the notice of rescission to be recorded within 30 days . . .”].)

This case is thus similar to *Orcilla*. Comstock defaulted on his loan, entered into the loan extension agreement, then failed to make a payment as required under the agreement. The trustee sold the property without issuing a new notice of default. As in *Orcilla*, a new notice of default was not required because under the terms of the loan extension agreement, Comstock had not cured his prior default. Indeed, in this case, the parties' intent as to cure was clear because the agreement explicitly provided for the rescission of the notice of default, but only after Comstock made certain payments. Further, similar to the modification agreement in *Orcilla*, the loan extension agreement provided that Rama was entitled to continue with foreclosure proceedings if Comstock failed to make “all of [the] payments required by section 2.a.”

Comstock attempts to distinguish *Orcilla* by arguing that he made a payment under the loan extension agreement whereas the borrowers in *Orcilla* failed to make any payments under their agreement. This difference is immaterial. The *Orcilla* court held that because the agreement stated “ongoing foreclosure proceedings would continue” if the borrowers failed to satisfy “the terms and conditions” of the agreement, and the borrowers indeed failed to satisfy the terms and conditions of the agreement, there was no need for a new notice of default. (*Orcilla*, *supra*, 244 Cal.App.4th at p. 1001.) The same is true here. Under the loan extension agreement, the parties agreed Rama could go forward with the sale if Comstock failed to make

one of the three installment payments.  The default was never cured, so there was no need for a new notice of default.

This case is unlike *Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, on which Comstock relies to argue that the notice of default was invalid.  *Anderson* did not involve a notice of default followed by a loan modification agreement.  Instead, the *Anderson* court held a very different notice of default was invalid.  There, the notice of default "listed failure to pay taxes and advances for insurance premiums as grounds of default . . . but appended the qualifying phrase 'if any' to the assertions." (*Id.* at p. 205.)  The court concluded the phrase "if any" made the notice of default insufficiently specific, thus creating a triable issue of fact as to whether the amount the borrower tendered in advance of the sale to cure the default was the correct amount.  (*Id.* at pp. 215–217.)  Comstock does not argue that the notice of default here was in any way ambiguous, or did not accurately refer to the amount of his August 2019 default.

This case is also materially different from *Taniguchi, supra*, 43 Cal.App.5th 478.  In *Taniguchi*, the court concluded the borrowers cured a default when they entered into a loan modification agreement because the agreement stated that the " '[l]ender will bring the loan due for the October 01, 2009 payment.' [Citation.]" (*Id.* at p. 488.)  In finding this language sufficient to show that the parties intended the agreement to cure the prior default, the court cited *Orcilla, supra*, 244 Cal.App.4th 982, for the proposition that "in appropriate circumstances, a statement that an agreement ' "will bring your loan current" ' can reasonably be interpreted to mean that the agreement cures a past default." (*Taniguchi*, at p. 488.)  Here, there is no such

15

language.  Comstock argues that the statement that the first installment payment would "extend the [m]aturity [d]ate of the [l]oan" is similar enough to show his past default was cured.  We disagree.  The more specific language in the loan extension agreement regarding rescission of the notice of default makes clear that Comstock did not cure his default simply by making the first installment payment under the loan extension agreement.  No such specific language was present in the agreement at issue in *Taniguchi*.

Accordingly, Comstock did not cure the default identified in the November 2019 notice of default when he paid the first installment payment under the loan extension agreement.  When Comstock failed to make the second installment payment on time, Rama had no duty under the loan extension agreement to rescind the 2019 notice of default and issue a new one.  That duty did not arise until Comstock made a timely third payment and paid all monthly interest payments.  Rama was entitled to proceed with the pending foreclosure sale without issuing a new notice of default.

## III.  Comstock Has Forfeited His Argument Under Section 2953

As noted above, Comstock's arguments regarding cure of the 2019 default and the resulting need for a new notice of default were raised below, litigated, and rejected by the trial court.  However, on appeal, Comstock's primary argument is one he did not raise below.  Comstock contends that to the extent the loan extension agreement included a waiver of his right to a new notice of default under section 2924, that portion of the agreement was invalid and void under section 2953.

16

Comstock concedes he has asserted this argument for the first time on appeal; however, he contends he generally preserved the issue by arguing the notice of default was defective.  In the alternative, he argues his claim under section 2953 is a legal question based solely on undisputed facts present in the record, thus we should exercise our discretion to consider the argument.  We disagree on both accounts.

" ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.  This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal." ' [Citation.]" (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.)

Comstock's claim under section 2953 is materially different from his argument below that the notice of default was ineffective because the default it described was cured by his first payment under the loan extension agreement.  Under section 2953, "[a]ny express agreement made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured by a deed of trust, mortgage or other instrument creating a lien on real property, whereby the borrower agrees to waive the rights, or privileges conferred upon the borrower by [s]ections 2924, 2924b, or 2924c of the Civil Code . . . shall be void and of no effect."

Comstock argues the loan extension agreement is one made "at the time of or in connection with the making of or renewing of any loan" under section 2953, so he could not waive his right to a new notice of default that includes a "statement setting forth the nature of each breach" under section 2924, subdivision (a)(1)(C).

17

While Comstock's argument, like his claim below, is premised on the assertion that the notice of default was invalid, the similarity between the arguments ends there. Comstock's limited contention that the notice of default was ineffective under section 2924 because it failed to reference the loan extension agreement did not preserve or encompass an argument that section 2953 rendered part of the agreement void. Neither the parties nor the trial court had the opportunity to consider the applicability, if any, of section 2953. (*Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569 [appellate court loath to reverse judgment on grounds neither opposing party nor court had opportunity to consider].)

Comstock alternatively argues this court should exercise its discretion to consider his argument under section 2953 because the relevant facts are undisputed and the question is one of law. While a party generally may not raise new theories on appeal, "an appellate court may allow an appellant to assert a new theory of the case on appeal where the facts were clearly put at issue at trial and are undisputed on appeal." (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879.) Here, however, the facts relevant to the resolution of Comstock's argument under section 2953 were not "clearly put at issue." (*Ibid.*) This is apparent when considering *Taniguchi, supra*, 43 Cal.App.5th 478, the case Comstock relies on to support his section 2953 argument.[5]

---

[5] Comstock suggests *Taniguchi, supra*, 43 Cal.App.5th 478, is "recent" authority. We note, however, that *Taniguchi* was decided in December 2019, before the parties entered into the loan extension agreement, and well before Rama instituted the unlawful detainer proceedings in February 2021.

In *Taniguchi, supra*, 43 Cal.App.5th 478, the borrowers entered into a "loan modification agreement" after experiencing difficulty making the required loan payments under their original home loan. (*Id.* at p. 481.) The loan modification agreement provided that the borrowers' failure to make payments required under the modified agreement would constitute a default and, in the event of a default, the lender would have the option of deeming the loan modification agreement null and void and would have the right to enforce the original loan according to the original terms. (*Id.* at p. 482.) Those original terms included acceleration clauses authorizing the lender to require a defaulting borrower to immediately pay the full amount of the loan's unpaid principal and all interest owed on that amount. (*Ibid.*) The borrowers defaulted on the modified loan and were informed that to cure the default they would be required to pay not only the monthly payments missed under the modified loan agreement, late charges, and foreclosure fees and costs, but also all the principal, interest, and other charges that had been deferred under the loan modification agreement. (*Ibid.*)

*Taniguchi* concerned section 2924c, which provides a statutory right of reinstatement, allowing a borrower to "reinstate the loan by paying all amounts due, 'other than the portion of [the] principal as would not then be due had no default occurred.' " (*Taniguchi, supra*, 43 Cal.App.5th at p. 483.) The *Taniguchi* court concluded section 2953 voided the provisions of the loan modification agreement that would have prevented the borrowers from taking advantage of section 2924c's provisions. To reach that result, the *Taniguchi* court concluded the loan modification was both made or entered into " 'in connection with the making of . . . [a] loan secured by a deed of trust' " and was

19

also the " 'renewing of [a] loan secured by a deed of trust' " under section 2953. (*Id.* at p. 487, citing section 2953.)

The court reasoned the loan modification agreement was " 'in connection with the making of . . . [a] loan secured by a deed of trust' (§ 2953), because amounts were added to the existing loan, specifically the accrued and unpaid interest." (*Taniguchi, supra*, 43 Cal.App.5th at p. 487.) The court also determined the agreement could be understood as "the 'renewing of [a] loan secured by a deed of trust' " because it "amended and supplemented the Taniguchis' original obligation, changing the time by which payments were due. And upon signing the Modification, the Taniguchis were no longer in default." (*Id.* at pp. 487–488.) The court recognized that while a loan *extension* may not bring an agreement under the ambit of section 2953 (*Morello v. Metzenbaum* (1944) 25 Cal.2d 494, 499–500), the loan modification agreement was "not a mere extension because it does not simply make the original loan effective for an additional period." (*Taniguchi,* at p. 488.) Although the original note "continue[d] to exist, its terms [were] amended considerably by the Modification." (*Ibid.*) Specifically, the modification agreement "adjusted the principal amount, eliminated an adjustable interest rate rider, reduced the interest rate and monthly payments, and deferred until the maturity [date] of the loan approximately $116,000 of indebtedness, including accrued and unpaid interest and principal, fees, and foreclosure expenses." (*Id.* at p. 481.) It also changed the loan from a 30-year to a 10-year term. (*Ibid.*)

In this case, the applicability of section 2953 is a legal question that depends on facts not fully developed in the record because the issue was never raised below. Whether the loan

20

extension agreement was made in "connection with the making of or renewing of any loan" under section 2953 is a fact intensive question that depends on factors such as whether the agreement deferred the principal; added other amounts to the existing loan, such as interest and foreclosure expenses; and whether it otherwise considerably amended the terms of Comstock's original loan. Because Comstock did not assert a defense under section 2953, the parties did not address these issues as either disputed or undisputed facts in connection with Rama's motion for summary judgment. The record, as it stands, does not provide dispositive answers to these factual questions.

For example, it is unclear whether the loan extension agreement increased the principal and created a new obligation. The agreement states, "as of the Effective Date, the outstanding Principal amount of the Loan is $4,000,000," yet the original loan was for $3,587,500. The record does not reflect whether or why the principal amount changed from the initial loan to the loan extension agreement, or whether any change was pursuant to the original loan agreement or was the result of negotiations between the parties following Comstock's first default. The adjustment of the loan's principal amount was a critical factor in the *Taniguchi* analysis. (*Taniguchi*, *supra*, 43 Cal.App.5th at p. 487.) Evidence such as correspondence between the parties or communications that would show their intent in entering into the loan extension agreement may have been relevant in determining whether the loan extension agreement was a loan renewal within the meaning of section 2953. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393 ["[a] party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties

21

understood and intended those terms to mean"].)  Indeed, Rama asserts it would have proffered specific evidence to defeat the section 2953 argument had Comstock raised it below.

Comstock's section 2953 argument does not pertain "only to questions of law on undisputed facts, which could not be altered by the presentation of additional evidence."  (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1326.)  The opposite appears to be true; the presentation of additional evidence may have altered the facts established through the summary judgment procedure.  We therefore decline to reach Comstock's section 2953 argument for the first time on appeal. (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 509–510 [declining to consider for first time on appeal allegations that raise new "issues of fact that could be altered by the presentation of additional evidence"]; *Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 726–727 [declining to consider for first time on appeal argument regarding written agreement that presents a new factual situation " 'the consequences of which are open to controversy and were not put in issue or presented at the trial' "], citing *Panopulos v. Maderis* (1956) 47 Cal.2d 337, 341; cf. *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [considering a theory of recovery raised for first time on appeal where the question is " 'presented on the facts appearing in the record' " and new "theory does not contemplate any factual situation different from that established by the evidence in the trial court"]; see *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767 [even if new theory raised on appeal is pure question of law court has discretion not to consider it].)

22

## IV. Comstock's Declaration Regarding Tender

Comstock argues the trial court improperly excluded his declaration stating he was willing and able to tender outstanding debt based on Rama's evidentiary objection that the declaration lacked sufficient personal knowledge. Although the trial court's written ruling indicated it sustained Rama's evidentiary objection, the court appeared to still consider the content of the declaration. The court found Comstock failed to submit any evidence he was ready and able to tender the full amount of debt listed in the notice of default. It explained that Comstock only submitted evidence that he was willing and able to make the payments that were "due and owing under the [loan extension agreement]." Thus, even if the trial court erred in sustaining the evidentiary objection, the error was not prejudicial as the court considered the content of the declaration and addressed the issue of tender on a substantive basis, relating it to the amount owing under the 2019 notice of default. Comstock does not contend he provided evidence demonstrating an ability to tender the outstanding debt identified in the 2019 notice of default.

## DISPOSITION

The judgment is affirmed.  Respondent Rama is to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ADAMS, J.


We concur:



LAVIN, Acting P. J.



EGERTON, J.